## OELBERMANN *v.* MERRITT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued November 3, 1887. — Decided November 21, 1887.

Under § 2930 of the Revised Statutes, the merchant appraiser must be a person familiar with the character and value of the goods; and under § 2901 he must open, examine and appraise the packages designated by the collector and ordered to be sent to the public stores for examination.

In a suit to recover back duties paid under protest, an importer has a right to show that those provisions of the statute have not been complied with.

For that purpose the merchant appraiser is a competent witness.

THIS was an action against the collector of the port of New York, to recover back duties alleged to have been illegally exacted. Judgment for defendant. Plaintiff sued out this writ of error. The case is stated in the opinion of the court.

*Mr. D. H. Chamberlain* and *Mr. Eugene H. Lewis* for plaintiffs in error. *Mr. W. B. Hornblower* was with them on the brief.

*Mr. Solicitor General* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law brought in the Circuit Court of the United States for the Southern District of New York by the members of the copartnership firm of E. Oelbermann & Co., against the collector of the port of New York, in November, 1880, to recover the sum of $4925.20, with interest, as an alleged excess of duties exacted by the collector on an importation of 34 cases of silk and cotton velvets into the port of New York from Germany, via Rotterdam, in June, 1879.

There were two invoices covered by one entry. One of the invoices was for 10 cases and the other for 24 cases. The collector designated 2 cases from the invoice of 10 cases and 3 cases from the invoice of 24 cases for examination by the appraiser, which 5 cases were sent to the public store. The appraiser, after examination, raised the entered value of the merchandise more than 10 per cent, and reported such advance in value to the collector. The plaintiffs thereupon gave notice to the collector of their dissatisfaction with such appraisement. The collector then selected Levi M. Bates, a merchant of New York City, to be associated as merchant appraiser with A. P. Ketchum, general appraiser, in examining and appraising the merchandise. Such proceedings were had that the general appraiser and the merchant appraiser disagreed, and made separate reports of their appraisement to the collector, who decided between them and adopted the report of the general appraiser as to the value of the merchandise. The entered value of the invoice of the 10 cases was $3477, and the entered value of the invoice of the 24 cases was $9441, being an aggregate entered value of $12,918, upon which, at the time of entry, the plaintiffs paid a duty of 60 per cent ad valorem, the proper rate, amounting to $7750.80. The value of the invoice of the 10 cases was advanced by the re-appraisement to $4032, and that of the invoice of the 24 cases to $11,522, making a total advanced value of the goods, after the re-appraisement, of $15,554. Thus the entered value of each invoice was advanced by the re-appraisement more than 10 per cent, and the collector liquidated the

duty on the goods at 60 per cent, upon such advanced valuation, such duties amounting to $9332.40, being an increase in the duty of $1581.60. In addition to such regular duty, he levied an additional duty of 20 per cent, under § 2900 of the Revised Statutes, upon the $15,554, amounting to $3110.80. The plaintiffs paid such two sums of $1581.60 and $3110.80, and filed a protest in writing on the 16th of October, 1879, in due time, against the alleged exaction. They also appealed from the decision of the collector to the Secretary of the Treasury, and brought this suit within the time limited by law. They included in their suit a further sum of $232.80, which had reference to some other matter. At the trial, the court directed the jury to find a verdict for the defendant, which was done; and, after a judgment for the defendant, the plaintiffs sued out a writ of error.

It appeared in evidence at the trial that all the cases covered by the invoice of the 10 cases were, before the official appraisement was made, sent to the appraisers' store; that the merchant appraiser advanced the value of the 10 cases an average of 8.4 per cent, and the value of the 24 cases an average of 8.9 per cent; and that the general appraiser advanced the value of the 10 cases an average of 16 per cent, and the value of the 24 cases an average of 22.1 per cent.

Among the grounds of objection stated in the protest were these, (1) that the merchant appraiser was not a merchant duly qualified to appraise the merchandise in question, as required by law, inasmuch as he was not familiar with the character and value of the goods to be appraised; (2) that the appraisers, and each of them, did not diligently and faithfully examine and inspect such packages of the goods as were designated by the collector on the invoices and were ordered to the public store to be opened, examined and appraised.

Section 2930 of the Revised Statutes provides, that the importer may, after the original appraisement of imported goods, give notice to the collector in writing of his dissatisfaction therewith, and that, on the receipt of such notice, "the collector shall select one discreet and experienced merchant to be associated with one of the general appraisers wherever practi-

cable, or two discreet and experienced merchants, citizens of the United States, familiar with the character and value of the goods in question, to examine and appraise the same, agreeably to the foregoing provisions; and if they shall disagree, the collector shall decide between them; and the appraisement thus determined shall be final and be deemed to be the true value, and the duties shall be levied thereon accordingly." It was under this provision of the statute that the foregoing proceedings took place.

After evidence to the purport before mentioned had been given, the plaintiffs called as a witness Mr. Bates, the merchant appraiser, who testified that he resided and carried on business in the city of New York, and that he served as merchant appraiser in this case, and received his appointment as such from the collector. The witness was then asked in succession, by the plaintiffs' counsel, the following questions:

" Q. Will you state whether, at the time you were selected to act as merchant appraiser, you had any familiarity, and if so, how much familiarity, with silk velvets?"

" Q. Will you state what familiarity you had with silk velvets at the time you were appointed merchant appraiser in this case?"

" Q. At the time you were appointed merchant appraiser were you familiar with the value of silk velvets?"

To each of these questions the counsel for the defendant objected, on the ground that each was incompetent and immaterial and also upon the grounds (1) "that it is not competent now to try the question as to whether the person appointed by the collector was familiar with the goods in question or not; that that is a question which must be determined by the collector;" (2) "that if it were competent for the plaintiffs to try the question at all here, it is not competent for them to prove the incompetency of this appraiser by his own mouth." The court sustained the objection to each question, and the plaintiffs excepted to each ruling.

After the last question above recited had been objected to, and before it was ruled upon, the court said: " I will exclude that in that form, but I do not intend to cut you off from

introducing any competent evidence of the fact that Mr. Bates was not a merchant; that is, an experienced man having some familiarity with these goods; that he was not of the class pointed out in the act of Congress, as an experienced merchant."

The plaintiffs' counsel then asked the witness the following question:

"Q. Will you state to the court and jury what steps you took after you became merchant appraiser to examine the merchandise which was the subject of re-appraisement?"

The defendant's counsel objected to this question "on the ground that it was incompetent and immaterial, and because the witness should not be allowed to impeach his own finding as merchant appraiser." Thereupon the court said: "As you put the question I shall exclude it; at the same time I should not exclude evidence that he made no examination at all or that he did not act at all." To this ruling the plaintiffs excepted.

The following question was then ruled out under the same objection, and the ruling was excepted to by the plaintiffs:

"Q. What did you do in the way of examination of the merchandise which was the subject of that re-appraisement?"

The following question was then put by the plaintiffs' counsel:

"Q. Did you make any examination of any of the merchandise which was the subject of that re-appraisement?"

The witness answered that he did, and that his examination was at the appraisers' headquarters, on the west side of the town.

The following questions in succession were then asked the witness by the plaintiffs' counsel, and to each the same objection was taken by the defendant. Each was ruled out by the court, and to each ruling an exception was taken by the plaintiffs:

"Q. Did your examination of the goods, such as it was, take place in the wareroom at the appraisers' headquarters?"

"Q. Who was present?"

"Q. Were the importers?"

" Q. Or either of them ? "

"Q. How many cases of merchandise belonging to this invoice did you find there ? "

" Q. How many cases did you open or have opened for examination ? "

" Q. How many pieces of velvet did you examine ? "

" Q. Was that the only examination you made of those goods ? "

" Q. Assuming that you had been examining those goods as a purchaser, and that you did not know who the owners were, and know nothing of their responsibility, would you have purchased the goods from the examination that you made, if there was nobody behind you to fall back upon if there were any variations in the quality ? "

The court then directed a verdict for the defendant, and the plaintiffs excepted to such direction.

Although the advance made in the valuation of each invoice by the merchant appraiser was less than 10 per cent, yet the importers were entitled to have à merchant appraiser with the qualifications prescribed by the statute, with a view to his legitimate influence with the general appraiser to limit his advance not only so that it should not exceed 10 per cent, with reference to the additional duty, but so that it should not exceed such sum as a merchant appraiser with those qualifications should deem just and fair. For the collector is required, by § 2930, to decide between the two appraisers, if they disagree.

It was held by this court, in *Hilton* v. *Merritt*, 110 U. S. 97, that the valuation of merchandise made by the customs officers under the statute for the purpose of levying duties thereon is, in the absence of fraud on the part of the officers, conclusive on the importer, and that §§ 2931 and 3011 of the Revised Statutes, which give the right of appeal to the Secretary of the Treasury, when duties are alleged to have been illegally or erroneously exacted, and the right of trial by jury in case of adverse decision by the Secretary of the Treasury, do not relate to alleged errors in the appraisement of goods.

In that case, there was a re-appraisement by a merchant ap-

praiser, associated with one of the general appraisers, of an invoice of kid gloves, and the collector had thereafter adopted the appraisement returned in an amended report of the general appraiser, and, the advance of the invoice value being 16.2 per cent, had imposed an additional duty of 20 per cent, on account of undervaluation in the entry. At the trial, the plaintiffs offered to show the foreign market value of the goods. They also offered in evidence the records of the proceedings before the merchant appraiser and the general appraiser, including the testimony and various documents before those officers and subsequently before the collector, and also the testimony of the collector to show all the facts within his knowledge, or officially acted upon by him, in relation to the invoice in question, and to show what his experience was in valuing kid gloves. This evidence was excluded. The plaintiffs also claimed the right to go to the jury upon the questions (1) whether the collector, acting as appraiser, fully and fairly examined the goods; (2) whether the goods were invoiced at their fair and actual value in the principal markets of France at the time of exportation; (3) whether a fair examination of the goods was made by the general appraiser, associated with the merchant appraiser, when that question was referred to him; (4) whether the facts stated in the protests had been established by the evidence; (5) whether the appraisers followed the evidence before them or disregarded it, and whether the collector disregarded the evidence or was negligent in his appraisal.

This court, in its opinion, stated that the question presented by the plaintiffs' exceptions was, " whether the valuation of merchandise made by the customs officers under the statutes of the United States for the purpose of levying duties thereon is, in the absence of fraud on the part of the officers, conclusive on the importer, or is such valuation reviewable in an action at law brought by the importer to recover back duties paid under protest."

On a consideration of all the sections of the Revised Statutes relating to the subject, embracing §§ 2900, 2902, 2906, 2922, 2929, 2930, 2931, 2949, and 3011, the court came to the con-

clusion, that the meaning of those sections was, that the appraisement of the customs officers should be final, but that all other questions relating to the rate and amount of duties might, after the importer has taken the prescribed steps, be reviewed in an action at law brought to recover duties unlawfully exacted; that the valuation made by the customs officers was not open to question in an action at law, so long as the officers acted without fraud and "within the power conferred upon them by the statute;" that the evidence offered by the plaintiffs and ruled out by the court "tended only to show carelessness or irregularity in the discharge of their duties by the customs officers, but not that they were assuming powers not conferred by the statute;" and that the questions which the plaintiffs proposed to submit to the jury were immaterial and irrelevant. This view of the statutes on the subject, and to which we adhere, does not cover the material questions raised in this case.

Section 2930 of the Revised Statutes provides, that, on the receipt by the collector of the notice of dissatisfaction, he "shall select one discreet and experienced merchant to be associated with one of the general appraisers wherever practicable, or two discreet and experienced merchants, citizens of the United States, familiar with the character and value of the goods in question, to examine and appraise the same." The qualification prescribed by this section requires as well that the merchant appraiser associated with one of the general appraisers shall be a discreet and experienced merchant, and a citizen of the United States, and familiar with the character and value of the goods in question, as it does that the two merchant appraisers, who are to act without the general appraiser, shall be discreet and experienced merchants, and citizens of the United States, and familiar with the character and value of the goods in question.

This § 2930 was taken from § 17 of the act of August 30, 1842, c. 270, 5 Stat. 564, and § 3 of the act of March 3, 1851, c. 38, 9 Stat. 630. Section 17 of the act of 1842 provided, that, on the receipt by the collector of the notice of dissatisfaction, he should select "two discreet and experienced merchants, citi-

zens of the United States, familiar with the character and value of the goods in question, to examine and appraise the same." Section 3 of the act of 1851 provided, that "wherever practicable, in cases of appeal from the decision of United States appraisers," under the provisions of § 17 of the act of August 30, 1842, "the collector shall select one discreet and experienced merchant, to be associated with one of the appraisers appointed under the provisions of this act, who together shall appraise the goods in question."

It is quite apparent that the "one discreet and experienced merchant" referred to in § 3 of the act of 1851 is to be a discreet and experienced merchant having the additional qualifications prescribed in § 17 of the act of 1842, that is, that he is to be also a citizen of the United States and familiar with the character and value of the goods in question.

The importer is entitled to have a merchant appraiser who answers these qualifications, and is entitled to raise the question of a want of qualification by a protest and an appeal to the Secretary of the Treasury, and in a suit at law brought thereafter. If the merchant appraiser does not possess these qualifications, he has no power conferred on him by the statute to act as a merchant appraiser. The questions excluded by the court at the trial of this case, so far as they bore upon the question as to whether Mr. Bates was familiar with the goods in question or not, were competent; and the ruling of the court, which was to the effect that that question was to be determined solely by the collector, was erroneous. The questions excluded by the court, as to whether Mr. Bates had any familiarity, and if so, how much, with silk velvets, and as to whether he was familiar with the value of silk velvets, were questions in the exact language of § 2930.

The remark of the court, that it did not intend to cut the plaintiffs off from any "competent evidence of the fact that Mr. Bates was not a merchant, that is, an experienced man, having some familiarity with these goods," and "that he was not of the class pointed out in the act of Congress, as an experienced merchant," must be regarded as emphasizing the word "competent," in view of the objection taken, that, if it

were competent for the plaintiffs to try at all the question as to whether Mr. Bates was familiar with the goods in question, it was not competent for them to prove his incapacity by his own mouth, and as sustaining that objection, and as holding that Mr. Bates was not a competent witness upon the subject of his familiarity with the character and value of silk velvets.

That the plaintiffs had a right, on the trial, to inquire whether the provisions of § 2930 had been complied with in this respect, has been determined by the decisions of this court in like cases. In *Greely* v. *Thompson*, 10 How. 225, the Circuit Court had instructed the jury, that the valuation made by two merchant appraisers, under the act of 1842, was invalid because one of the merchants who made the appraisement was wrongfully substituted for another who had been appointed, and who was removed by the collector for having stated it to be his opinion that the plaintiffs should have time to obtain evidence from England as to the true market value of the goods. The judgment of the Circuit Court was affirmed by this court, on the ground, among others, that the removal of one of the merchant appraisers, and the appointment in his place of another, under the circumstances stated, was illegal. This was an examination into the competency of the appointment of the substituted merchant appraiser, of the same character with the inquiry into the competency of the merchant appraiser in the present case.

In *Converse* v. *Burgess*, 18 How. 413, which arose under the act of 1842, the plaintiffs offered to prove that the merchant appraisers did not examine or see any of the original packages of the merchandise, which was sugar, but only saw samples which had been previously taken from one in ten of the packages described in the invoice, and that such samples would not, when exposed to the air, afford a fair criterion by which to judge of the importation, and claimed the right to go behind the return of the merchant appraisers, on the ground that they had not examined the sugar. Section 21 of the act of August 30, 1842, c. 270, 5 Stat. 565, now embodied in § 2901 of the Revised Statutes, provided that the collector

should designate on the invoice at least one package of every invoice, and one package at least of every ten packages imported, to be opened, examined, and appraised in the public stores. The defendant objected to the admission of the evidence, in the absence of fraud on the part of the appraisers, and claimed that their decision was in the nature of an award, and final under the statute, and not open to review under the protest. The protest alleged that the goods "were not fairly and faithfully examined by the appraisers." The Circuit Court ruled that the evidence was admissible, and that the plaintiffs might go to the jury on the question whether the examination made by the merchant appraisers was in substance and effect equivalent to an examination of one package in ten of the importation, and that, if it was not, the appraisement was void. The plaintiffs had a verdict and a judgment, and, on a writ of error by the collector, the judgment was affirmed by this court. The court observes, in its opinion, that the decision of the merchant appraisers is final "provided it is made in pursuance of law;" and, referring to the acts of Congress on the subject, the court adds: "These acts of Congress provide for the appointment, regulate the duties, and impose the limitations on the authority of the appraisers, and determine the conditions on which the validity of their assessment depends. All their powers are derived from these acts, and it is their duty to observe the restrictions and to obey the directions they contain. In the present instance, there was a neglect of the positive mandate 'to open, examine and appraise one package of every invoice, and one package at least of every ten packages of goods, wares and merchandise;' and the jury have found that the inquiry they made was not, in substance nor in effect, an equivalent for such an examination. We are, therefore, of the opinion that the importer was not precluded by their return from disputing the sufficiency or accuracy of their assessment."

If such non-observance of the positive mandate of the statute in regard to the examination of so many of the original packages as the statute specified, as a condition on which the validity of the assessment depended, vitiated the

appraisement, the non-observance of the statute in regard to the qualifications of the merchant appraiser must be regarded as equally one of the conditions on which the validity of the assessment depends, and the plaintiff must have an equal right in either case to make proof, at the trial, of such non-observance, if he has complied with the other statutory requirements necessary for the bringing of his suit. We do not lay down any absolute or comparative standard of familiarity with the character and value of the goods which must be applied to carry out the requirements of the statute. There must be, in every case, a substantial compliance with the statute. This does not necessarily require the highest degree of such familiarity. There must be, in good faith, in every case, the appointment of a person having the qualifications prescribed by the statute.

In regard to the question whether Mr. Bates was a competent witness to prove that he was not familiar with the character and value of silk velvets, we are of opinion that his evidence on that subject was admissible. As the question of his familiarity with the article and with its value necessarily depended upon the nature, and to some degree, at least, upon the extent, of his experience in connection with the article, no one could know what that experience was so well as himself. If he is to be excluded as a witness on the subject, when offered by either side, the court and the jury and the parties would be deprived of the best testimony within reach. There is no ground of public policy which forbids that the merchant appraiser should be a witness to the extent above indicated. The brief of the solicitor general does not urge that the witness was not a competent witness to that extent.

The question is somewhat analogous to that in the case of an arbitrator. It has been held that an arbitrator can be a witness as to the time when, and the circumstances in which he made an award, with a view to show that, by the terms of the submission, he was not authorized to make the award, *Woodbury* v. *Northy*, 3 Greenleaf, 81; as to the fact that the arbitrators did not examine or act upon a certain matter, *Roop* v. *Brubacker*, 1 Rawle, 304; as to facts which occurred

at or during the arbitration, and which tend to show the award to be void for legal cause, *Strong* v. *Strong*, 9 Cushing, 560, 576; and as to whether a certain claim was included in the award, *Hale* v. *Huse*, 10 Gray, 99. See also *Spurck* v. *Crook*, 19 Ill. 415. The same principle has been applied in the case of a tribunal called a jury, appointed to assess damages and apportion benefits in the widening of a street, *Canal Bank* v. *Mayor*, 9 Wend. 244; and in the case of commissioners appointed to condemn land for railroad purposes, *Marquette Railroad Co.* v. *Probate Judge*, 53 Mich. 217. In *Duke of Buccleuch* v. *Metropolitan Board of Works*, L. R. 5 H. L. 418, it was held that an arbitrator may be a witness as to what passed before him and as to what matters were presented to him for consideration. (See 2 Greenleaf on Evidence, § 78 and notes.)

We are also of opinion that the court erred in excluding the evidence of Mr. Bates, which was offered to show that he did not observe the requirements of § 2901 of the Revised Statutes, and did not open, examine, and appraise the packages designated by the collector, and ordered to be sent to the public store for examination. The court observed that it would not exclude evidence that Mr. Bates made no examination at all, and thereupon the witness, in reply to a question whether he made any examination of any of the merchandise, answered that he did. But this ruling did not give to the plaintiffs that to which they were entitled. The subsequent questions which were excluded, as to how many cases he opened or had opened for examination, and as to the character of the examination he made, the object of which questions was to ascertain whether it was such an examination as the statute prescribed, were intended to show a non-compliance with the statute as to examination, within the terms of the protest. This the plaintiffs had a right to show. In *Greely* v. *Thompson* (before cited), the Circuit Court had instructed the jury that if both of the appraisers did not make some personal examination of the goods, their report or decision was not made in conformity to law, and did not justify the penalty; and the propriety of this instruction was approved by this court. In *Converse* v. *Bur-*

*gess* (before cited), it was held, as we have seen, that the appraisement was vitiated by proof of a failure to open, examine, and appraise the packages designated by the collector, or to do what was an equivalent for such an examination.

We are also of opinion, for the reasons before stated, that Mr. Bates was a competent witness to prove the extent and character of the examination which he made of the goods in question. He may have been the only witness who could testify as to such examination, and certainly there was no witness who could know more on the subject.

We do not consider it necessary or proper to express an opinion upon any of the other questions raised by the counsel for the plaintiffs in error.

*The judgment of the Circuit Court is reversed, and the case is remanded to that court, with a direction to award a new trial.*