UNITED STATES v. LOEB et al.

(Circuit Court of Appeals, Second Circuit. April 3, 1901.)

No. 22.

1. CUSTOMS DUTIES—BOARD OF GENERAL APPRAISERS—JURISDICTION—NOTICE OF DISSATISFACTION—NECESSITY.

The customs administrative act of 1890 provides (section 13) that, if the collector shall deem the appraisement of any imported merchandise too low, he may order a reappraisement by one of the general appraisers, and that if the importer, owner, etc., shall be dissatisfied, and give notice thereof, or if the collector shall deem the reappraisement too low, he "shall transmit the invoice, and all the papers appertaining thereto," to the board of three general appraisers, to examine and finally decide the case. *Held*, that formal notice to the board of dissatisfaction by either the importer or collector was not needed to give it jurisdiction, transmission to it of the designated papers being sufficient, and hence the fact that a collector was satisfied, but ordered a reappraisement pursuant to instructions from the treasury department, would not nullify its action.

2. SAME—APPRAISEMENT—CONCLUSIVENESS—IMPEACHMENT.

While, as a general rule, the valuation of appraisers is conclusive on all parties, the appraisement may be impeached if the appraiser or collector proceeded on a wrong principle, contrary to law, or transcended the power conferred by statute, or did not comply therewith.

3. SAME—DUTIES OF APPRAISERS—VIOLATION.

The customs administrative act of 1890 provides (section 10) that the appraisers shall ascertain the actual market value and wholesale price of the merchandise at the time of exportation, "and the number of yards, parcels or quantities, and the actual market value or wholesale price of every one of them, as the case may require." Pursuant thereto the board of general appraisers made a report as to importations of Swiss laces, embroideries, and handkerchiefs, adding percentages to value, as appears by the following example: "On items invoiced at 18 centimes, stitch rate, add 36%; on balance of goods, add 10%." They did not, however, carry out on the invoice the value per aune (the Swiss unit) in francs and centimes, though this could easily be computed by the customhouse officers. *Held*, that there was no violation of the requirements of the statute.

4. SAME—TREASURY REGULATIONS—CONSTRUCTION.

Paragraph 845 of the treasury regulations provides that appraisers shall make advances on invoices on the unit value declared on entry, in the currency in which the invoice is made out, in a specific sum per pound, yard, or other unit of value, and not by percentage, and in the weight, gauge, or measure expressed in the invoice, but that no average valuation shall be made, and that the additions shall be made by writing on the invoice, opposite each item advanced, the words, "add to make market value," stating in numerals the amount necessary to make the

price per unit. *Held* directory, and not mandatory, in the sense that neglect to conform thereto would create an illegal appraisal.

5. SAME—FAILURE TO PERSONALLY EXAMINE GOODS—EVIDENCE—INVALIDITY OF APPRAISEMENT.

Where importers distinctly testified that the board of general appraisers made no personal examination or investigation of invoices in question, as required by Rev. St. § 2901, and no opposing evidence was presented, the facts must be regarded as proved, notwithstanding the presumption in favor of the correctness of official action, and the appraisement must be held invalid.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In 1898, Loeb & Schoenfeld made three separate importations into the port of New York of Swiss laces, embroideries, and handkerchiefs. No question arose in regard to the classification of the articles or the rate of duty, but a serious question arose in regard to their dutiable value. They were appraised by the local appraiser, and he advanced considerably the invoice and entered value. From this appraisal the importers appealed to one general appraiser, in conformity with section 13 of the customs administrative act of 1890, and he considerably reduced the local appraiser's valuation. The collector was satisfied with the general appraiser's valuation, did not think it too low, but yielded to the expressed desire and request of the secretary of the treasury for a revaluation, and appealed to the reappraising board of three general appraisers, and transmitted to them the invoices and papers appertaining thereto, with the following appeal appended to the several invoices: "I hereby appeal from the decision of the general appraiser in this case, and under the provisions of and in accordance with section 13 of the act of June 10, 1890, transmit the invoice to the board of general appraisers for a reappraisement of the merchandise covered thereby." This board, overruling the importers' demurrer, which raised the question of their jurisdiction, made a reappraisement, which advanced the value found by the one general appraiser. The collector liquidated the entries accordingly, and the importers paid the duties under written protests. The principal ground of the protests was the illegality of the liquidation, because it was based upon a reappraisement which the appraising board of general appraisers was without jurisdiction to make. The protests were transmitted to the board of general appraisers, designated under section 14 of the act of 1890, for the purpose of reviewing the action of the collector, and the board, after taking testimony upon the grounds named in the protests, found that the collector did not deem the reappraisement of the single general appraiser to have been too low, and did not state in his appeal that he so deemed, but that he appealed in compliance with the request of the secretary of the treasury; and upon the question of jurisdiction of the appraising board concluded that "a condition precedent to the acquirement of jurisdiction by said board is a statement by the collector, in proper form, that he deems the reappraisement of the merchandise made by a single general appraiser to be too low, and this requirement was not complied with when the collector ordered the reappraisement contrary to his own judgment, under instructions of the treasury department," and that the appraising board was therefore without jurisdiction to make the appraisement. The protests, so far as they relate to the question of jurisdiction, were sustained, and the collector's decision was reversed. The circuit court affirmed the decision of the board of general appraisers.

Henry C. Platt, for appellant.
W. Wickham Smith, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. It is urged by the appellant that the court below erred in adopting the conclusions of the board of general appraisers that the reappraisement of the dutiable value of the im-

ported merchandise made by the board of three general appraisers, upon the appeal by the collector from the reappraisement of the single general appraiser, was void for want of jurisdiction. The board of general appraisers was of the opinion that the board of three general appraisers did not acquire jurisdiction, owing to the absence of a formal statement by the collector that he deemed the reappraisement of the single general appraiser too low, upon transmitting to the board the invoice and papers appertaining to the appraisement. The court below, assuming that a formal statement to this effect by the collector upon such an appeal is a condition precedent to the acquirement of jurisdiction by the board of three general appraisers, merely discussed in the opinion rendered the further question of the authority of the secretary of the treasury to intervene and coerce the action of the collector. The statutory provisions which control the question are found in section 13 of the customs administrative act of 1890. That section provides that, if the collector shall deem the appraisement of any imported merchandise too low, he may order a reappraisement, which shall be made by one of the general appraisers; that the decision of the general appraiser, in cases of reappraisement, shall be final and conclusive as to the dutiable value of such merchandise against all the parties interested therein, unless the importer, owner, consignee, or agent of the merchandise shall be dissatisfied with the decision, and shall within two days thereafter give notice to the collector in writing of such dissatisfaction, or unless the collector shall deem the appraisement of the merchandise too low; that, in either of these cases, "the collector shall transmit the invoice, and all the papers appertaining thereto," to the board of three general appraisers, which board shall examine and decide the case; and that the decision of this board, or that of a majority of them, shall be final and conclusive as to the dutiable value of such merchandise against all the p... interested therein, and the collector, or the person acting as such, shall ascertain, affix, and liquidate the amount of duties to be paid on such merchandise, and the dutiable costs and charges thereon, according to law.

As the board of three general appraisers is a special tribunal, and derives its jurisdiction from a compliance with the statutory requirements conferring it, it is undoubtedly true that its acts and decisions are coram non judice, unless the jurisdiction has been invoked pursuant to the terms of the statute by which it is conferred. But we find nothing in section 13 which requires a formal notice to the board of dissatisfaction by either the importer or collector as preliminary to the exercise of the jurisdiction to examine and decide the case submitted to the board. According to the terms of the section, if the jurisdiction is invoked by the importer, he must give notice of his dissatisfaction with the decision of the single general appraiser to the collector, and the collector is to "transmit the invoice, and all the papers appertaining thereto," to the board, and, if the jurisdiction is invoked by the collector, he must likewise "transmit the invoice, and all the papers appertaining thereto," to the board. The language of the section does not direct the collector to transmit to the board the

importer's notice of dissatisfaction, or any signification of his own dissatisfaction. The section apparently does not contemplate that the board shall be informed as to the circumstance whether their jurisdiction is sought by the importer or by the collector. There is no conceivable reason why the board should be informed of this circumstance. It is not one which could properly influence their determination or their action in any way. Their duty is confined to examining and deciding the case submitted to them, and the single question involved in such a case is the dutiable value of the merchandise. Whether the importer is of the opinion that it has been appraised too high, or whether the collector is of the opinion that it has been appraised too low, are irrelevant considerations. In requiring that the "invoice and the papers appertaining thereto" shall be transmitted to the board, the statute obviously contemplates that these papers will be useful in assisting them in the discharge of their duty. As a notice of dissatisfaction on the part of either party would not be of the slightest use, the statute does not include one in the papers to be transmitted by the collector. We are of the opinion that it is the meaning of the section that the board shall acquire jurisdiction by the transmission to them of the designated papers. They are thereby informed that their jurisdiction is invoked, and that a case is before them for examination and decision.

If the conclusion thus reached is correct, the state of mind of the collector at the time of transmitting the papers to the board cannot affect its jurisdiction, and, having transmitted them, it is not relevant to inquire whether he was actuated by an honest sense of duty, or by the instructions of the secretary of the treasury. If it was the intention of congress that a reappraisement by the board could be nullified whenever it could be made to appear that the collector did not really think the appraisement by a single general appraiser was too low, it is not found in the language of the statute. If this were the meaning of the statute, the reappraisement could also be nullified whenever it could be shown that the importer was not really dissatisfied with the appraisement of the single appraiser, notwithstanding he had given written notice to that effect to the collector, and the statute would hold out a strong temptation to the importer to prove that fact whenever, upon a reappraisement, the dutiable value of the merchandise should be increased by the board. A construction which would infect reappraisements with such infirmities is quite inadmissible. If a notice of appeal was important, the transmission of the notice, with the invoices and accompanying papers, was sufficient to confer jurisdiction, and was conclusive upon that question. The appeal is an official act, which declares that the collector wishes the judgment of the appraising board upon a question of importance to importers and to the treasury, and precludes inquiry into the reasons which led him to appeal.

The importers also protested against the action of the collector in affixing the amount of duty in accordance with the valuation made by the appraising board, upon the ground that it violated the statutory requirements in two respects. "While the general rule is that the valuation is conclusive upon all parties, nevertheless the

appraisement is subject to be impeached where the appraiser or col-lector has proceeded on a wrong principle, contrary to law, or has transcended the power conferred by statute," or has not complied with statutory provisions. U. S. v. Passavant, 169 U. S. 16, 18 Sup. Ct. 219, 42 L. Ed. 644; Oelbermann v. Merritt, 123 U. S. 356, 8 Sup. Ct. 151, 31 L. Ed. 164; Converse v. Burgess, 18 How. 413, 15 L. Ed. 455.

The first of this class of objections is that the appraising board made its additions to value by percentages, and did not state upon the invoices the value per unit in francs and centimes. Section 10 of the customs administrative act provides that the appraiser shall ascertain the actual market value and wholesale price of the mer-chandise at the time of exportation, "and the number of yards, parcels or quantities, and the actual market value or wholesale price of every one of them, as the case may require." The apprais-ers made a report which added percentages, as appears by the fol-lowing example: "On items invoiced at 18 centimes, stitch rate, add 36%; on balance of goods, add 10%." They did not carry out upon the invoice the value per aune (the Swiss unit) in francs and centimes. This could easily be computed, and, of course, was com-puted by the custom-house officials, and the amount to be assessed by the collector was ascertained. There is no violation of a statutory requirement.

It is, however, said that paragraph 845 of the treasury regulations was not complied with, which is as follows:

"In making advances on invoices, the appraisers will make the addition to or advance upon the unit value declared on entry, in the currency in which the invoice is made out, in a specific sum per pound, yard, or other unit of value, and not by percentage, and in the weight, gauge, or measure expressed in the invoice, but no average valuation shall be made. In such cases the appraiser shall make the additions by writing on the invoice opposite each item advanced the words, 'add to make market value,' stating in numerals the amount necessary to make the price per unit."

This regulation was a very proper one for the guidance of apprais-ing officers, and one which the treasury department was authorized to make, but it is evidently directory, and not mandatory, in the sense that a neglect to conform to it created an illegal appraisal.

The second objection is that the hand-made embroideries contained in invoice 5,446, protest 46,841b, by the Gascogne, entered February 8, 1898, and the handkerchiefs imported by the Gascogne, entered March 7, 1898, were never examined by the appraising board, who nei-ther had the cases nor samples of the goods, and could have made no personal examination or investigation of them. While the presump-tion is in favor of the correctness of official action, yet these facts were clearly testified to by the importers, who had adequate means of knowledge, and no opposing evidence was presented. The facts up-on which the objection is founded must be regarded as proved.

Repeated decisions of the circuit and of the supreme courts are to the effect that a neglect of the appraisers to take the means required by statute for an examination of the goods in question invalidates the appraisement. Converse v. Burgess, 18 How. 413, 15 L. Ed. 455; Oel-bermann v. Merritt, 123 U. S. 356, 8 Sup. Ct. 151, 31 L. Ed. 164. Sec-

tion 2901 of the Revised Statutes requires one package in ten to be opened, examined, and appraised, and in regard to the two named classes of articles the appraisers had neither package nor samples. They had a package of another importation containing embroideries, and a package containing handkerchiefs of another importation, the value of which was not advanced, but had no samples from the particular importation, and the articles in the packages in the public stores were not identical with the goods of which they had neither packages nor samples.

The decision of the circuit court which affirmed the decision of the board of general appraisers is affirmed as to the protests against the action of the collector in regard to the hand embroideries and the handkerchiefs in the two invoices named herein, and is reversed as to the other grounds named in the protests.