## HILTON & Another v. MERRITT, Collector.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

Argued December 17th and 18th, 1883.—Decided January 14th, 1884.

### *Customs Duties.*

1. The valuation of merchandise made by customs officers, under the statutes, for the purpose of levying duties thereon, is, in the absence of fraud on the part of the officers, conclusive on the importer.
2. §§ 2931, 3011, Rev. Stat., which give the right of appeal to the Secretary of the Treasury, when duties are alleged to have been illegally or erroneously exacted, and the right of trial by jury in case of adverse decision by the Secretary of the Treasury, do not relate to alleged errors in the appraisement of goods, but to the rate and amount of duties imposed upon them after appraisement.

This was a suit brought by the plaintiffs in error, who were plaintiffs in the Circuit Court, to recover the sum of $1,037.40, an alleged excess of duties exacted by the defendant as collector of customs at the port of New York, on two cases of kid gloves imported by plaintiffs from Paris, France, in the steamer Mosel, in June, 1878.

The complaint alleged that the plaintiffs made due protest at the time of paying such excessive duties, and made due and timely appeal to the Secretary of the Treasury, who affirmed the decision of defendant by which said duties were exacted.

The answer denied that the duties exacted were excessive, and averred that they were according to the rule imposed by law.

The case was tried by a jury, who, after hearing the evidence, returned, by direction of the court, a verdict for defendant, upon which judgment for costs was entered in his favor. To reverse that judgment this writ of error is prosecuted.

*Mr. Henry E. Tremain* for plaintiff in error.

*Mr. Solicitor-General* for defendant in error.

Mr. Justice Woods delivered the opinion of the court.

It appears from the bill of exceptions found in the record that the withdrawal entry of the packages on which the duty occasioning this controversy arose, was made October 23d, 1878. The local appraiser made and reported to the collector his appraisement of the goods. The importers being dissatisfied therewith, demanded a reappraisement according to law, which was allowed, and a merchant appraiser appointed to be associated with one of the general appraisers.

The merchant appraiser made an appraisement of the standard gloves at 42 francs per dozen, and of the invoice at 16,613.10 francs, which corresponded with the importer's invoice and entered valuation of the merchandise in question.

The general appraiser made a report of his appraisement on the same day, in which he put the value of the standard gloves at 52 francs, and the total valuation at 20,282.85 francs.

Upon receiving these and other appraisements, the collector

wrote to the general appraiser a letter, dated October 10th, 1878, in which he said:

"I have received the reports on the re-appraisement of gloves entered by Wilmerding, Hoguet & Co., per S. S. Lessing; Iselin, Neeser & Co., per S. S. Pereire; and A. T. Stewart & Co., per S. S. Mosel, together with a mass of testimony taken at the hearing, and a special report from yourself, giving in extenso your reasons for differing from the merchant appraisers in these cases. The merchant appraisers sustain the invoices or entered value, while you advance the value in two of the cases upwards of 20 per cent. The law requires the collector in cases of difference to decide between the merchant and general appraiser. I find that it has been the almost universal practice for the collector under these circumstances to adopt the higher valuation. Unwilling to accept this easy method of disposing of troublesome questions, and believing it to be the duty of a government officer, while carefully protecting the revenue, to see that no injustice is done to the merchant, I have personally devoted much time and attention to the examination of the evidence presented.

"It is a matter of surprise that three 'discreet' merchants should differ so widely from the general appraiser. With no disposition to evade the responsibility placed upon me by the law, I consider that the interests involved and the vexatious delays in reaching a satisfactory conclusion require that an effort should be made to fix a value which will remain unchallenged. I have therefore to suggest that you re-examine the evidence, in the hope that a result may be reached which shall not, on the one hand, make it appear that the merchants of New York cannot be relied upon to give a fair hearing and correct judgment on a question of value, or on the other hand, that the government seeks and enforces by its might that which is unjust.

"I would call your attention to the conflicting evidence as to the similarity of the glove marketed in London and New York.

"I would also call your attention to the amount to be added per button to represent the true value. I find it difficult from the evidence to fix this amount at five francs per dozen.

"The three reports are returned herewith."

To this letter the general appraiser replied, by letter of the same date, stating, among other things, as follows:

"As to the invoices under consideration I do not feel at liberty to formally withdraw the reports I have already presented, because they were found on the evidence received on the reappraisements, and I think it best that they should stand as expressing my convictions based on that evidence. If, however, you are willing to retain them as memoranda for that purpose, and will accept as substitutes therefor. the additional reports which I present herewith and have designated as 'amended' reports, I shall feel that I have met, to the best of my ability, the considerations which your letter set forth."

The amended report of the general appraiser fixed the value of the merchandise in question in this case at 49 francs.

The collector, on October 23d, 1878, assessed the duty, 50 per cent. *ad valorem*, on the merchandise, based on the valuation of the standard glove at 49 francs, adopting the appraisement returned in the amended report of the general appraiser, that being an advance of the invoice value of 16.2 per cent., and imposed an additional duty of 20 per cent. *ad valorem* on account of undervaluation in the entry.

The importers, the plaintiffs in error, duly protested against the action of the collector and, under protest, paid the duties assessed and appealed to the Secretary of the Treasury, who, on November 11th, 1878, approved the decision of the collector, holding, however, that the correctness of the valuation was not a matter subject to appeal.

Upon the trial of the case the plaintiffs offered in evidence the records of the proceedings before the merchant appraiser and the general appraiser, including the testimony and various documents before those officers, and. subsequently before the collector. They also offered the testimony of one Hildreth, an expert, and others, to show the foreign market value of gloves at the principal markets of France, whence the merchandise in question was imported. They also offered the testimony of the collector to show all the facts within his knowledge, or officially acted upon by him, in relation to the invoice in question, and to show what his experience was in valuing kid gloves. They also offered to prove the cost of the manufacture of goods similar to those in question. All the evidence

so offered was excluded by the court, and the plaintiffs excepted.

It also appears from the bill of exceptions that the plaintiff's counsel claimed the right to go to the jury upon the questions: (1) Whether the collector, acting as appraiser, fully and fairly examined the goods. (2) Whether the goods were invoiced at their fair and actual value in the principal markets of France at the time of exportation. (3) Whether a fair examination of the goods was made by the general appraiser, associated with the merchant appraiser, when that matter was referred to him. (4) Whether the facts, stated in the protests of the appraisers had been established by the evidence; and (5) whether the appraiser followed the evidence before him or disregarded it, and whether the collector disregarded the evidence or was negligent in his appraisal.

The plaintiffs also asked the court to charge the jury that if the collector did not fully and fairly examine the goods, then the verdict need not necessarily follow the appraisement; that the general appraiser not having re-examined the goods after he made his first report, the jury is not concluded by his report at 49 francs, or the collector's action therein.

The court refused to submit the questions aforesaid to the jury or to charge the jury as requested, and the plaintiffs excepted.

The bill of exceptions further states that no claim was made to submit to the jury any question of fraud on the part of the collector or appraiser, and that no claim was made during the trial that any excluded evidence was offered for the purpose of showing or did show or tended to show fraud on the part of the government officers.

The question presented by the exceptions of plaintiffs is whether the valuation of merchandise made by the customs officers under the statutes of the United States for the purpose of levying duties thereon is, in the absence of fraud on the part of the officers, conclusive on the importer, or is such valuation reviewable in an action at law brought by the importer to recover back duties paid under protest.

The solution of this question depends upon the provisions of

the acts of Congress regulating the subject, which are as follows:

Section 2900 declares in substance that the owner, &c., of any merchandise may, when he shall produce the original invoice to the collector and make and verify his written entry, and not afterward, make such addition to the cost or value given in the invoice as shall raise the same to the actual market value at the time of importation in the principal markets of the country from which the same has been imported, and the collector shall cause such actual market value to be appraised, and if such appraised value shall exceed by ten per centum or more the value declared in the entry, then there shall be collected in addition to the duties imposed by law a duty of twenty per cent. *ad valorem* on such appraised value.

Section 2902 declares:

"It shall be the duty of the appraisers of the United States, and every of them, and every person who shall act as such appraiser, or of the collector and naval officer, as the case may be, by all reasonable ways and means in his or their power, to ascertain, estimate, and appraise the true and actual market value and wholesale price, any invoice or affidavit thereto to the contrary notwithstanding, of the merchandise at the time of exportation and in the principal markets of the country whence the same has been imported into the United States, and the number of such yards, parcels, or quantities, and such actual market value or wholesale price of every of them, as the case may require."

Section 2906 provides:

"When an *ad valorem* rate of duty is imposed on any imported merchandise, or when the duty imposed shall be regulated by or directed to be estimated or based upon the value of the square yard, or of any specified quantity or parcel of such merchandise, the collector . . . shall cause the actual market value or wholesale price thereof at the period of exportation to the United States in the principal markets of the country from which the same has been imported to be appraised, and such appraised value shall be considered the value on which the duty shall be assessed."

Section 2922 is as follows:

"The appraisers, or the collector and naval officer, as the case may be, may call before them and examine upon oath any owner, importer, consignee, or other person, touching any matter or thing which they may deem material in ascertaining the true market value or wholesale price of any merchandise imported, and require the production on oath to the collector, or to any permanent appraiser, of any letters, accounts or invoices in his possession relating to the same. All testimony in writing, or depositions, taken by virtue of this section, shall be filed in the collector's office, and preserved for future use or reference, to be transmitted to the Secretary of the Treasury when he shall require the same."

Section 2929 provides that the principal appraisers shall revise and correct the report of the assistant appraisers as they may judge proper, and report to the collector their decision thereon, who, if he deems any appraisement of goods too low, may order a reappraisement either by the principal appraisers or by three merchants designated by him for that purpose, and may cause the duties to be charged accordingly.

Section 2930 is as follows:

"If the importer, owner, agent, or consignee of any merchandise shall be dissatisfied with the appraisement, and shall have complied with the foregoing requisitions, he may forthwith give notice to the collector, in writing, of such dissatisfaction ; on the receipt of which the collector shall select one discreet and experienced merchant to be associated with one of the general appraisers wherever practicable, or two discreet and experienced merchants, citizens of the United States, familiar with the character and value of the goods in question, to examine and appraise the same, agreeably to the foregoing provisions ; and if they shall disagree, the collector shall decide between them, and the appraisement thus determined shall be final and deemed to be the true value, and the duties shall be levied thereon accordingly."

Section 2949 provides that the Secretary of the Treasury from time to time shall establish such rules and regulations,

not inconsistent with the laws of the United States, to secure a just, faithful, and impartial appraisement of all merchandise imported into the United States, and just and proper entries of the actual market value or wholesale price thereof.

The provisions of the statute law show with what care Congress has provided for the fair appraisal of imported merchandise subject to duty, and they show also the intention of Congress to make the appraisal final and conclusive. When the value of the merchandise is ascertained by the officers appointed by law, and the statutory provisions for appeal have been exhausted, the statute declares that the "appraisement thus determined shall be final and deemed to be the true value, and the duties shall be levied thereon accordingly." This language would seem to leave no room for doubt or construction.

The contention of the appellants is, that after the appraisal of merchandise has been made by the assistant appraiser, and has been reviewed by the general appraiser, and a protest has been entered against his action by the importer, and the collector has appointed a special tribunal, consisting of a general and merchant appraiser, to fix the value, and they have reported each a different valuation to the collector, who has decided between them and fixed the valuation upon which the duties were to be laid, that in every such case the importer is entitled to contest still further the appraisement and have it reviewed by a jury in an action at law to recover back the duties paid. After Congress has declared that the appraisement of the customs officers should be final for the purpose of levying duties, the right of the importer to take the verdict of a jury upon the correctness of the appraisement should be declared in clear and explicit terms. So far from this being the case, we do not find that Congress has given the right at all. If, in every suit brought to recover duties paid under protest, the jury were allowed to review the appraisement made by the customs officers, the result would be great uncertainty and inequality in the collection of duties on imports. It is quite possible that no two juries would agree upon the value of different invoices of the same goods. The legislation of Congress, to which we have referred, was designed, as it ap-

pears to us, to exclude any such method of ascertaining the dutiable value of goods. This court, in referring to the general policy of the laws for the collection of duties, said in *Bartlett* v. *Kane*, 16 How. 263, " The interposition of the courts in the appraisement of importations would involve the collection of the revenue in inextricable confusion." And, referring to section 3 of the act of March 3d, 1851, which is reproduced in section 2930 Revised Statutes, this court declared, in *Belcher* v. *Linn*, 24 How. 508, that, in the absence of fraud, the decision of the customs officers " is final and conclusive, and their appraisement, in contemplation of law, becomes, for the purpose of calculating and assessing the duties due to the United States, the true dutiable value of the importation." To the same effect see *Tappan* v. *United States*, 2 Mason, 393, and *Bailey* v. *Goodrich*, 2 Cliff. 597.

The appellants contend, however, that the right to review the appraisement of the customs officers by a jury trial is given to the importer by sections 2931 and 3011 of the Revised Statutes. The first of these sections provides that on the entry of any merchandise the decision of the collector as to the rate and amount of duties shall be final and conclusive unless the importer shall, within two days after the ascertainment and liquidation of the proper officers of the customs, give notice in writing to the collector on each entry, if dissatisfied with his decision, setting forth distinctly and specifically the grounds of his objection thereto, and shall within thirty days after such ascertainment and liquidation appeal therefrom to the Secretary of the Treasury, and the decision of the Secretary in such appeal shall be final and conclusive, and such merchandise shall be liable to duty accordingly, unless suit shall be brought within ninety days after such decision of the Secretary of the Treasury. Section 3011 provides that any person who shall have made payment under protest of any money as duties, when such amount of duties was not, or was not wholly, authorized by law, may maintain an action, which shall be triable by jury, to ascertain the validity of such demand and payment of duties, and to recover back any excess so paid; but no recovery shall be allowed in such action unless a protest

and appeal shall have been taken as prescribed in section 2931.

The argument is that by these sections the appraisement which had been declared final by section 2930 is opened for review by a jury trial. Such is not, in our opinion, a fair construction of this legislation. Considering the acts of Congress as establishing a system, and giving force to all the sections, its plain and obvious meaning is that the appraisement of the customs officers shall be final, but all other questions relating to the rate and amount of duties may, after the importer has taken the prescribed steps, be reviewed in an action at law to recover duties unlawfully exacted. The rate and amount of duties depends on the classification of the imported merchandise, that is to say, on what schedule it belongs to. Questions frequently arise whether an enumerated article belongs to one section or another, and section 2499 of the Revised Statutes provides that there shall be levied on every non-enumerated article which bears a similitude either in material, quality, texture, or the use to which it may be applied to any enumerated article chargeable with duty, the same rate of duty which is levied and charged on the enumerated article which it most resembles in any of the particulars before mentioned. In determining the rate and amount of duties, the value of the merchandise is one factor, the question what schedule it properly falls under is another.

Congress has said that the valuation of the customs officers shall be final, but there is still a field left for the operation of the sections on which the plaintiffs in error rely. Questions relating to the classification of imports, and consequently to the rate and amount of duty, are open to review in an action at law. This construction gives effect to both provisions of the law. If we yield to the contention and construction of plaintiffs in error, we must strike from the statute the clause which renders the valuation of dutiable merchandise final.

We are of opinion, therefore, that the valuation made by the customs officers was not open to question in an action at law as long as the officers acted without fraud and within the power conferred on them by the statute. The evidence offered

by the plaintiffs, and ruled out by the court, tended only to show carelessness or irregularity in the discharge of their duties by the customs officers, but not that they were assuming powers not conferred by the statute, and the questions which the plaintiffs proposed to submit to the jury were, in the view we take of the statute, immaterial and irrelevant.

The plaintiffs in error make the further point that the merchant appraiser having appraised the goods in question at 42 francs, and the general appraiser at 52 francs, the law which made it the duty of the collector to decide between them required him to adopt one valuation or the other, and did not authorize him to fix a valuation of his own between those made by the merchant and general appraisers, and that his appraisement at 49 francs was beyond his powers and unauthorized by law, and consequently void. Without deciding whether this construction of the law is the correct one, we reply that the bill of exceptions shows that after making his first report, the general appraiser filed an amended report, in which he placed his valuation at 49 francs, which was adopted by the collector. The right of the appraiser to amend his report was distinctly recognized in this court in *Bartlett* v. *Kane*, 16 Howard, *ubi supra.* The informal character of his amended report could not affect the power of the collector to act in the premises.

The plaintiffs in error contended further that a denial of the right to bring an action at law to recover duties paid under an alleged excessive valuation of dutiable merchandise, is depriving the importer of his property without due process of law, and is therefore forbidden by the Constitution of the United States. The cases of *Murray's Lessee* v. *Hoboken Land & Improvement Company*, 18 How. 272, and *Springer* v. *United States*, 102 U. S. 686, are conclusive on this point against the plaintiff in error.

We find no error in the record. The judgment of the Circuit Court must, therefore be

*Affirmed.*