BRIGGS, EXTRX., *v.* UNITED STATES (No. 311).[1]

REAPPRAISEMENT BY BOARD OF GENERAL APPRAISERS.

On an admittedly imperfect record it appears a Board of General Appraisers reappraised a consignment of goods; yet even if it be assumed the board erred in excluding relevant evidence or in admitting irrelevant evidence; or that it assigned an undue weight to the evidence before it, still, there being evidence that the board acted upon evidence, and there being no evidence here that the board exceeded its authority, it will be presumed to have made its finding within the scope of its authority, and its decision must stand.—Wolff *v.* United States (T. D. 31217) cited and approved.

United States Court of Customs Appeals, April 3, 1911.

APPEAL from a decision of the Board of United States General Appraisers, Abstract 23555 (T. D. 30710).

[Affirmed.]

*B. A. Levett* for appellant.

*D. Frank Lloyd*, Assistant Attorney General (*Charles E. McNabb* on the brief), for the United States.

Before MONTGOMERY, HUNT, SMITH, and BARBER, Judges.

HUNT, Judge, delivered the opinion of the court:

Appellant herein imported certain chinaware into the United States on March 5, 1907.   The merchandise was advanced in value by the appraiser, and was the subject of a reappraisement by a general appraiser, who sustained the entered value.   A further reappraisement was had by a board of three general appraisers, under the provisions of section 13 of the act of June 10, 1890, which resulted in the board's advancing the goods 5 per cent above the entered value. The importer protested, and appealed from this decision to the Board

---

[1] Reported in T. D. 31482 (20 Treas. Dec., 673).

of United States General Appraisers, which, after refusing to admit the record of proceedings before the reappraisement board, overruled the protests.

The importer now asks that the decision of the Board of United States General Appraisers be reversed, or that the case be remanded to the board with instructions to admit the record in evidence and decide the case on its merits.

The record shows that it was admitted by counsel before the Board of General Appraisers that it was incumbent upon the importer to show that there was no evidence before the board of reappraisement to support the finding of said board. Accepting this burden, counsel for the importer asked leave to submit in evidence the reappraisement record, "not for the purpose of weighing it, but merely to see if there was any evidence upon which the board could make the findings." With this offer, counsel said he would rest the importer's case.

Counsel for the Government objected to the introduction of the record of proceedings before the board of reappraisement for the reason that the record offered related to "reappraisements 44147, etc.," not covered by any of the protests concerning the goods directly involved, and upon the ground that material papers and exhibits were lacking. Counsel said that among the exhibits described as not found was one marked "No. 2," a price list; one marked "No. 4," a bill of purchase; some samples of chinaware; a price list of an importer, Haviland; a report of a special agent referring to other papers; also a catalogue of the importer, Briggs. Counsel for the importer said that the exhibits being public records and part of the files of the Board of General Appraisers, he could not be held responsible if they were not there. Thereupon, counsel for the importer, disregarding his previous statement that he would rest his case, offered to call General Appraiser Fischer to show that the particular record offered in the case was that upon which the immediate cases were decided by the board of reappraisement. The Board of General Appraisers excluded the record, expressing the opinion that, in the condition in which it was, it was inadmissible. Counsel for the importer then at once asked leave to supply the deficiencies in the record, stating that the records were in the custody of the Board of General Appraisers, and urged that "the record should be admitted for what it is worth, even if it is not complete; the testimony is complete."

After some discussion as to the whereabouts of the missing exhibits counsel for the importer asked for a continuance of the case to enable him to produce the missing exhibits or evidence as to what they were An adjournment of three weeks was then ordered.

When the hearing was resumed, counsel for the importer again based the protest against the liquidation of the collector upon the ground that there was no evidence upon which the board of reappraisement had formed its opinion and upon the ground that, as no goods of Theodore Haviland's were sold on the other side in wholesale quantities, the construction of section 19 required that the export price should be taken. Counsel said that if the board of reappraisement had proceeded upon a wrong construction of the law the Board of General Appraisers could review the ruling, and that if it should find that the Government had showed retail sales then the reappraisement board had acted contrary to law in holding that retail sales were sufficient to shift the burden of proof. Counsel said that he proposed to show by the record and by evidence that no sales at all were made on the other side. Counsel for the Government objected upon the ground that there was nothing to show that the hearing before the board of reappraisement was open. No direct ruling seems to have been made; but the Board of General Appraisers allowed the counsel for the importer to proceed with his evidence and to call the clerk of the reappraisement division to testify. This witness said, in effect, that the papers filed with reappraisements No. 44147, etc., handed to him for examination, were, so far as he knew, those which contained the papers and testimony which were before the reappraisement board that tried the matter under consideration.

Mr. Levett, counsel for the importer, also testified and identified the record of testimony which was heard in open hearing before the board of reappraisers, saying that such record marked "reappraisements 44147, etc.," pertained to protests then before the board, and that, so far as he knew, the record showed everything that was admitted in evidence before the board of reappraisers.

The clerk of the Board of General Appraisers also testified in behalf of the importers, and said, in effect, that while he could not identify the particular envelope or papers, he presumed that they were those which had been filed before the board of reappraisement, and that in the ordinary course of business the papers would be filed with the case number appearing upon the envelope.

Counsel for the importer again offered the papers referred to. Counsel for the Government objected, on the ground that the number appearing on the reappraisement record was not covered by any protest then under consideration before the Board of General Appraisers, and that the abbreviation "etc.," which appeared on the envelope after the number 44147, had not been explained; that there were 19 reappraisement cases covered by the protests under consideration, and that the date that appears on them was different from that appearing on the record offered in evidence; that the

record did not purport to be an open hearing; that the record was incompetent and immaterial, and also that certain exhibits, a bill of sale, and a price list of Haviland's were missing.

Counsel for the importer then stated to the Board of General Appraisers that the date, May 22, was not the date that the cases were decided, but that they were all in one record; that the record showed that there had been examination and cross-examination of witnesses; that the evidence did not show that any exhibits were missing, and that although the record disclosed that certain exhibits were offered before the board of reappraisement, there was nothing to show that the exhibits had been considered by the said board. The importers' counsel admitted, however, that some exhibits were missing, but said that the missing exhibits were offered in evidence by the Government and not by the importer, but that as the testimony accurately described the exhibits, the Board of General Appraisers could tell exactly what they were; that the record showed that among the exhibits were three or four plates and a catalogue, but that the figures as given in the catalogue were given in the testimony, and that the plates were described; that the record showed that the reappraisement board did not consider the catalogue; that the testimony showed that there were no sales brought in wholesale quantities, and that the board had no evidence to support its finding and had acted contrary to section 19, which counsel said applies to the export price when there are no sales on the other side.

The board rejected the record, and again the counsel for the importer proceeded with evidence, calling an examiner of merchandise, who testified that he recalled the Briggs china importation, and that he had had in his possession a price list of Haviland, and that he examined the price list; that he had a catalogue, and that the prices to which he had advanced the goods were in some instances the catalogue prices with "20 and 2 off," but that there were other goods not advanced to the catalogue prices with discount off.

A witness named Burgess, called for the importer, said that he had testified before the reappraisement board; that he recalled the price list that had been introduced in the reappraisements 44147, etc.; that there was an illustrated catalogue and a price list and two separate books; that one was a wholesale illustrated list and the other a wholesale selling price list; that the indication that it was a wholesale list from the Paris house was that it indicated the prices and assortments of the various countries, not only for France and for Holland, but Germany and for other countries. Witness said that certain parts of the evidence relating to exhibits referred to particular illustrations appearing in the catalogue, and that the catalogue correctly represented certain plates.

Counsel for the importer again offered the record in evidence, on the ground that he had identified every exhibit except the price list, and that there was no other evidence relating to the price list in the record; that the record, supplemented by the testimony just theretofore taken, showed what was before the board of appraisement, and therefore put the Board of General Appraisers in a position to pass on what was before the reappraisement board. His argument was then that there was enough before the Board of General Appraisers to show that the reappraisement board was not justified in its finding.

A summary of the attitude into which the case finally drifted is gathered by the following question and answer:

General Appraiser HAY. You offer this record to show: First, that the board had no testimony before it to base its finding; second, for the purpose of showing that the price was a retail price and not a wholesale price?

Mr. LEVETT. Third, that the board in advancing the goods on that record proceeded contrary to section 10, which provides that they must pursue reasonable ways and means. I think the board was unreasonable in accepting the testimony of Mr. Burgess and the catalogues and the different articles offered in evidence. I think they were unreasonable in all of that.

General Appraiser SOMERVILLE. The board is of opinion that the purpose for which that testimony is offered is not warranted and the effect of it would be an attempt on the part of the importer's counsel to convert this board of classification into a board of reappraisement, and for that reason we propose to exclude it, and furthermore, that the record is not complete.

General Appraiser HAY. The record shows upon its face that it is an incomplete record.

Mr. LEVETT. May I ask if the board's sole reason for ruling it out is that it is incomplete?

General Appraiser SOMERVILLE. Not at all.

Counsel for the importer was then allowed to call Mr. Fischer, chairman of the reappraisement board. Mr. Fischer stated that at the hearing in the Briggs china matter, before the reappraisement board, two books were in evidence, catalogues issued by the Paris or French house of Haviland, and that he remembered there was a price list, and that some plates were introduced. Counsel for the importer then asked Mr. Fischer whether, in rendering the decision of the board of reappraisement, the missing exhibits were considered, but objection to this question was sustained by the Board of Appraisers. Thereafter, counsel for the importer sought to have the case reopened, basing his application upon the ground that it was competent to show that the board of reappraisement proceeded upon a wrong principle; that he desired to introduce oral testimony as to whether the reappraisement board took Paris or Limoges as the market. The board declined to reopen the case.

The Board of General Appraisers decided that the contention of the importer that the board of reappraisement had made its finding

without evidence to support it, was not supported by the evidence, and overruled the protests.

Careful examination of the foregoing statement makes it very plain that the position of the importer, wherein she rested her case upon the ground that the reappraisement record offered would show that there was no evidence upon which the reappraisement board could have made its finding, must be regarded as having been abandoned, because after the exclusion of the offer of the records, her counsel voluntarily proceeded to introduce testimony which was inconsistent with his offer, in that it showed conclusively not only that, as a fact, there was material oral evidence heard by the reappraisement board when it made the finding objected to, but that such evidence was supplemented by exhibits consisting of price lists, wholesale catalogues from Paris, and sample china plates. Thus the case as submitted became one where the board of reappraisement advanced the value of merchandise, after hearing evidence apparently relevant, bearing upon the value of the merchandize at the place of export, as defined by section 19 of the tariff act of June 10, 1890.

Under such conditions the importer herself is bound by her evidence, introduced before the board, establishing facts which, aside from the record offered, rendered the acts of the reappraisement board valid and conclusive, as against the attack made upon it; wherefore it follows that the several assignments of error based upon the action of the Board of General Appraisers in excluding the record of proceedings before the reappraisement board pertain to a matter of no material importance.

There is no evidence which tends to show that the board of reappraisement acted in excess of its jurisdiction, and though we might assume that it erred in excluding evidence which was competent, or admitted evidence which was incompetent, or that it improperly weighed evidence which was before it, still having acted within its authority, its decision can not now be impeached.

In Wolff *v.* United States, *supra,* p. 181 (T. D. 31217), we gave much attention to the question of attacks upon the findings of appraisers and boards of reappraisement, and inquired into the strength of the judgments of such officials and boards, and announced the rule which controls in the present case. Judge Smith, for the court, said:

From mistakes and errors made by the appraiser and general appraiser in the exercise of their power and jurisdiction to appraise, the statute provides the remedy of appeal to a Board of General Appraisers, and when that body has passed upon the appeal the door is closed by the express terms of the statute upon further inquiry into the matter. Origet *v.* Hedden (155 U. S., 228). To permit of a review of a decision of the appraisers on the ground that it was erroneous, that it was mistaken, that it was incorrect, that it was induced by a wrong conception of the facts, that the appraisers had not used good judgment, that they ignored facts which they should have considered or gave weight to evidence which should have been excluded, would overturn the.

whole system so carefully and wisely elaborated by Congress for the determination of values and the prompt collection of customs duties. Inquiry into value and the methods of reaching it must end somewhere, and when Congress decided that it should end with an appeal to the Board of General Appraisers sitting as a reappraisement board, its wishes in that behalf should be respected, especially as a judicial revision could afford no higher guaranties of a flawless judgment, no better security for a decision free from error, than does that of the system which the legislature saw fit to establish. Evidence that appraising officers were careless, or even irregular, in the performance of their duties falls short of showing that they assumed powers not conferred on them by the statute, and their valuation can not be impeached by evidence of that character. Neither is it competent to inquire as to whether the appraisers followed or disregarded the evidence produced before them. Hilton v. Merritt (110 U. S., 97, 107); Auffmordt v. Hedden (137 U. S., 310, 325). Estimates of value require the consideration of many elements.

\*          \*          \*          \*          \*          \*          \*

The fact that a method of appraisement is employed which would lead to erroneous results and which could not be relied upon as a safe guide in any case does not nullify the appraisement. Bartlett v. Kane (16 How., 263, 271).

Appraisements have been reviewed where the appraisers were disqualified from acting, *and therefore had no power, authority, or jurisdiction to make them.* Greely v. Thompson (10 How., 225); Oelbermann v. Merritt (123 U. S., 356); Mustin v. Cadwalader (123 U. S., 369). They have been set aside by the courts when the appraisers have not examined or seen the goods which the law required them to examine or appraise, and had therefore *failed to acquire in the manner prescribed by statute jurisdiction of the subject matter* upon which they were to exercise their discretion and judgment. Greely's Administrator v. Burgess (18 How., 413); Oelbermann v. Merritt (123 U. S., 356). They have been declared invalid by judicial tribunals where the appraisers, after finding market value and wholesale price, have, independent of such value, added on items which it was not their function, but that of the collector, to determine, and from the finding of which by the collector *an appeal to the courts is expressly allowed by the provisions of sections 14 and 15 of the act of June 10, 1890.* United States v. Passavant (169 U. S., 16, 19); United States v. Klingenberg (153 U. S., 93, 101, 104); Badger v. Cusimano (130 U. S., 39, 43); Hilton v. Merritt (110 U. S., 97, 106); Robertson v. Frank (132 U. S., 17, 24); Oberteuffer v. Robertson (116 U. S., 499, 515).

But these decisions have carefully refrained from impeaching the appraisement in so far as it related to the simple finding of market value, and even where "charges" have been considered by appraisers as an element and factor in reaching a conclusion as to such value the courts have declined to interfere. Belcher v. Linn (24 How., 508); Passavant v. United States (169 U. S., 16, 25).

No force of argument can withdraw the present case from the consequences of the principles just enunciated. They flow from the facts affirmatively showing jurisdiction in the reappraisement board, and valuations found by it in the lawful exercise of jurisdiction.

It follows, therefore, that the Board of General Appraisers was right in refusing to sustain the importer's protests, and their decision is affirmed.

MONTGOMERY, Presiding Judge, and SMITH and BARBER, Judges, concur. DE VRIES, Judge, being disqualified, took no part in the hearing or decision of this case.