147

(C.D. 2452)

E. DILLINGHAM, INC.
WALTERS AXE CO., INC. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 6, 1964)

*Sharretts, Parley & Carter (Eugene F. Blauvelt and M. Barry Levy of counsel) for the plaintiffs.*

*John W. Douglas*, Assistant Attorney General (*Samuel D. Spector*, trial attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Two protests, 61/24855 and 61/24835, were consolidated for the purpose of trial and determination.

The merchandise in controversy was exported from Canada and is described on the entry papers as "steel-drop-forgings."

The collector of customs classified the merchandise as cutting tools, not specially provided for, in paragraph 396 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 396), as modified by the Annecy Protocol to the General Agreement on Tariffs and Trade, 84 Treas. Dec. 403, T.D. 52373, supplemented by Presidential proclamation, 85 Treas. Dec. 116, T.D. 52462, and imposed duty thereon at the rate of 22½ per centum ad valorem.

The sole claim of plaintiffs, set forth in their protests, is for classification in paragraph 319(a) of said act (19 U.S.C. § 1001, par. 319(a)), as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, as forgings of iron or steel, not machined, tooled,

or otherwise advanced in condition by any process or operation subsequent to the forging process, dutiable at the rate of 10½ per centum ad valorem.

The pertinent provisions of the statutes under consideration read as follows:

Paragraph 396 of the Tariff Act of 1930, as modified, *supra:*

Drills (including breast drills), bits, gimlets, gimlet-bits, countersinks, planes, chisels, gouges, and other cutting tools; all the foregoing, if hand tools not provided for in paragraph 352, Tariff Act of 1930, and parts thereof, wholly or in chief value of metal, not specially provided for_____ 22½% ad val.

Paragraph 319 (a) of said act, as modified, *supra:*

Forgings of iron or steel, or of combined iron and steel, not machined, tooled, or otherwise advanced in condition by any process or operation subsequent to the forging process, not specially provided for_____ 10½% ad val.

At the trial, the following exhibits were introduced in evidence:

Plaintiffs' exhibits 1, 2, and 3 illustrate the merchandise in its condition upon arrival in the United States.

Plaintiffs' exhibit 4—sample of a billet or bar from which merchandise, such as exhibits 1, 2, and 3, is fabricated.

Plaintiffs' exhibit 5—finished product resulting from processes applied to exhibit 2 subsequent to importation.

Plaintiffs' exhibit 6—illustrates exhibit 2 after it has been completed by processes subsequent to its importation, with handle permanently attached.

The only witness in the case, John E. Hammell, testified for the plaintiff in substance as follows: He is vice president of Walters Axe Co., Inc., in Ogdensburg, N.Y. (the real party in interest), and manager of the Walters Axe Co., Ltd., in Hull, Province of Quebec, Canada, which are two separate companies. He has been an employee of the Canadian company for 16 years and is presently its manager, having charge of production and operations in connection with the manufacture of axes.

The witness was thoroughly familiar with the forging operations used in the production of the imported merchandise, represented by exhibits 1, 2, and 3. Using exhibit 2 as an example, he described the operations in forging the article as follows: Starting with a bar or billet, represented by plaintiffs' exhibit 4, heat is applied to a temperature of approximately 2,150 degrees Fahrenheit. The metal is then subjected to a pounding to a desired shape, such as exhibit 2, by a drop hammer, weighing 3,000 pounds.

Next is an operation in what is known as a punch press, by which the excess metal that accumulates around the edges of the drop die cavity is sheared off. The article is then placed in what is referred to as a forging upset machine, by means of which the "eye" of the

forging is pierced while the metal is still hot. The resulting product is in the form of exhibit 2, except that, before shipment to the United States, another operation is performed to remove any sharp burrs or slivers of steel resulting from the forging operations. This is done by a grinding operation on a stone.

After the merchandise arrives in the United States, it is subjected to various finishing processes and eventually a handle is inserted to make a complete commercial article, such as plaintiffs' exhibit 6. These processes account for 95 percent of the value of the finished product.

It is the contention of plaintiffs that the merchandise represented by exhibits 1, 2, and 3 consists of forgings of iron or steel—

* * * not machined, tooled, or otherwise advanced in condition *by any process or operation subsequent to the forging process* * * *. [Italics supplied.]

within the meaning of paragraph 319 (a), *supra.*

In support of their contention, plaintiffs rely upon the decisions in *J. D. Richardson Co.* v. *United States,* 40 Treas. Dec. 255, T.D. 38913, and *Tower* v. *United States,* 7 Ct. Cust. Appls. 408, T.D. 36981.

The merchandise in the *Richardson* case consisted of unfinished shovel blades, black and unpolished, and the issue before the court was whether they should be classified in paragraph 106 of the Tariff Act of 1913 as "* * * forgings of iron or steel, * * * but not machined, tooled, or otherwise advanced in condition by any process or operation subsequent to the forging process" or as agricultural implements within the meaning of paragraph 391 of said act.

It was stipulated that when the shovel blades were fully completed with handles attached they would be similar in all material respects to the shovels which were the subject of decision in the case of *Tower* v. *United States, supra.* The opinion of the court, in the *Richardson* case, does not inform us precisely how the unfinished shovel blades there under consideration had been produced. However, the classification by the collector of customs, which was affirmed, carries with it the presumption that the forgings had not been advanced in condition by any process or operation subsequent to the forging process. Consequently, that case offers little light upon the real issue involved herein.

The *Tower* case, above referred to, related to long-handled, round-point polished shovels and D-handled, square-point shovels, which the evidence showed were chiefly used by farmers for agricultural purposes. They had been classified as articles or wares, not specially provided for, composed of metal, in paragraph 167 of the Tariff Act of 1913, and were held by the court to be admissible free of duty as agricultural implements. That case, therefore, is of little importance here.

The Government invites our attention to the following two cases to support its contention that the merchandise involved herein has been further advanced than forging: *United States* v. *Anderson & Co.*, 2 Ct. Cust. Appls. 350, T.D. 32080, and *Ford Motor Co.* v. *United States*, 19 CCPA 69, T.D. 44897.

In the *Anderson* case, the court was concerned with the classification of what is described in the opinion as "a diamond shaped hoe with a shank for attaching thereto a handle, in which shank is a hole apparently to aid in holding the handle in place by means of a rivet or screw to be inserted therein."

The merchandise had been classified as an article in chief value of metal, not specially provided for, in paragraph 199 of the Tariff Act of 1909. It appears that the hoes in that case were first "rough forged from steel bars and then the burr which is left on the edge of the hoe by the forging process is removed by passing it over a grindstone" and nothing further was done to the hoes, except to dip them in oil prior to exportation.

The court commented upon the circumstance that, in paragraph 127 of the Tariff Act of 1897, there was a provision for "forgings of iron or steel, or of combined iron and steel, of whatever shape or whatever degree or stage of manufacture, not specially provided for," and that, in an earlier case, *Prosser* v. *United States*, 1 Ct. Cust. Appls. 550, T.D. 31551, it was held that a forging which had been rough turned or rough machined, processes designed to finish the forging but not to complete it, was still a forging within the meaning of the act.

The effect of the *Prosser* case was overcome by the change of language in the provision for forgings of iron or steel appearing in paragraph 123 of the Tariff Act of 1909, wherein the provision for forgings was limited to such as have not been "machined, tooled, or otherwise advanced in condition by any process or operation subsequent to the forging process."

The court, in the *Anderson* case, held that the articles there in issue were forgings, advanced in condition by a process subsequent to the forging process, and affirmed the classification of the merchandise by the collector of customs as articles in chief value of metal, not specially provided for.

The provision for forgings in paragraph 123 of the Tariff Act of 1909, *supra*, is substantially *in haec verba* the language of the forgings provision in paragraph 319(a) of the Tariff Act of 1930, with the result that the *Anderson* case, *supra*, is controlling here.

The *Ford Motor* case, *supra*, related to certain iron and aluminum castings. They had been subjected to what is described as a "profiling operation," which the record disclosed advanced the castings "one step nearer" their intended form as special dies. The court held that the

castings there in question had been improved in condition and advanced in value by the profiling operation—a manufacturing process—and were, therefore, excluded from paragraph 1514, which granted free entry to "Articles the growth, produce, or manufacture of the United States, when returned after having been exported without having been advanced in value or improved in condition * * *."

While the competing provisions of the statute in the *Ford* case are different from those in the case at bar, nevertheless, the principle of decision as to the treatment of the castings has some bearing here.

We are clearly of the opinion that the articles in controversy are not forgings of the kind described in paragraph 319(a), *supra*, it appearing from the record that they have been advanced in condition by a process or operation subsequent to the forging process. (*United States* v. *Anderson & Co., supra.*)

While it is unnecessary, in view of the above conclusion, to pass upon the correctness of the collector's classification, nevertheless, we are of the opinion that the subject merchandise is not within the provision for cutting tools which are associated in paragraph 396 with drills, bits, gumlets, planes, chisels, and so forth, and are, in fact, handtools, specifically so denominated in said paragraph.

Paragraph 396, *supra*, bears clear evidence on its face that Congress did not intend the provision therein for "cutting tools" should embrace roughly shaped articles in the condition as they are imported from the foundry.

As we pointed out in *The Singer Manufacturing Company* v. *United States*, 22 Cust. Ct. 21, C.D. 1152, affirmed in *United States* v. *The Singer Manufacturing Company*, 37 CCPA 104, C.A.D. 427, involving the dutiable classification of castings of iron in their first estate as such, not having been machined or otherwise processed since being cast, and not having been "made up into articles, or parts thereof, or finished machine parts," within the meaning of paragraph 327 of the Tariff Act of 1930—

* * * We deem it of no particular significance that the various castings bear indications of their ultimate use for the simple reason that so far as we are informed substantially all castings of iron are fabricated from predetermined patterns which naturally suggest their intended use.

The same is equally true of the forging process. If castings and forgings were to be treated for tariff purposes as the unfinished articles their shapes indicate, then there would be little need for provisions for castings and forgings in the tariff act.

The context of paragraph 396 further indicates a clear distinction between the articles provided for therein and foundry products.

After enumerating several cutting tools by name, the paragraph specifies "* * * other cutting tools; all the foregoing, *if hand tools*

*not provided for in paragraph 352*, Tariff Act of 1930, and parts thereof, * * *." [Italics supplied.]

The language of paragraph 352, which is pertinent here, reads as follows:

Twist and other drills, reamers, milling cutters, taps, dies, die heads, and *metal-cutting tools of all descriptions*, and *cutting edges or parts for use in such tools, * * * all the foregoing, if suitable for use* in cutting metal, * * *. The foregoing rates shall apply *whether or not the articles are imported separately or as parts of or attached to machines, * * *.* [Emphasis added.]

Obviously, this language has reference to articles having cutting qualities at the time of importation, some of which may be ready for use as parts of machines.

The imported forged axe heads are, in reality, foundry products and are, in fact (though not in law), forgings and would be so classified for duty but for the restrictive language of paragraph 396. As a matter of fact, paragraph 127 of the Tariff Act of 1897 was more liberal in its enumeration of "forgings of iron or steel, or of combined iron and steel, of whatever shape or whatever degree or stage of manufacture," as indicated in the *Anderson* case, *supra*. Paragraph 123 of the Tariff Act of 1909 placed a limitation upon the condition of forgings to be so classified, as does paragraph 319(a), *supra*.

We are clearly of the opinion that the subject merchandise is not within the purview of paragraph 396; neither does it come within the restrictive provision for forgings in paragraph 319(a).

For the reasons stated, the protests are overruled, and the decision of the collector is affirmed, but not approved.

Judgment will issue accordingly.