Eivor BROWN, Audrey Low, Felecia Colbert, Constance Cannon, on their behalf and on behalf of all others similarly situated, Plaintiffs,

v.

The CITY OF DETROIT Defendant.

Civ. No. 88–72335.

United States District Court,
E.D. Michigan, S.D.

July 13, 1989.

Mark Brewer, Detroit, Mich., William Wertheimer, American Civ. Liberties Union, Southfield, Mich., Paul Denenfeld, American Civ. Liberties Union Fund of Michigan, Detroit, Mich., for plaintiffs.

Samuel Gardner, Detroit, Mich., for defendant.

## MEMORANDUM

COHN, District Judge.

### I.

This case presents a challenge to the drug testing program of the Detroit Police Department adopted by the Board of Police Commissioners on May 25, 1988. At a hearing held on July 10, 1989, the Court dissolved a previously entered temporary restraining order prohibiting the random drug testing of sworn police officers. This memorandum will briefly relate the history and demise of the temporary restraining order, as well as briefly elaborate on the reasons for its dissolution.

### II.

Plaintiffs are four sworn Detroit police officers who bring the case on their own behalf and on behalf of all others similarly situated. The case is not a class action at this stage. A separate action brought by the Detroit Police Officers Association challenging the drug testing program has been resolved.

On November 10, 1988, the parties consented to the continuation of a previously entered temporary restraining order until further order of the Court. At that time, two drug testing cases were currently pending before the United States Supreme Court. *National Treasury Employees Union v. Von Raab*, 816 F.2d 170 (5th Cir.1987), *cert. granted,* — U.S. ——, 108 S.Ct. 1072, 99 L.Ed.2d 232 (1988) and *Railway Labor Executives Association v. Burnley*, 839 F.2d 575 (9th Cir.), *cert. granted,* — U.S. ——, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). In *Von Raab,* plaintiffs challenged the United States Customs Service's program of drug testing agents promoted to positions involving the interdiction of illegal narcotics or requiring the use of firearms. *Railway Labor Executives* involved a challenge to the Federal Railroad Administration's drug testing of all railroad employees involved in major accidents or violating certain safety rules. On March 27, 1989, the Supreme Court upheld both programs. *Skinner v. Railway Labor Executives,* — U.S. ——, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989); *National Treasury Employees Union v. Von Raab,* — U.S. ——, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989).

On the authority of *Railway Labor Executives* and *Von Raab,* defendant moved to dissolve the restraining order and for summary disposition on May 15, 1989. The motion was not supported by an affidavit but did cite to the "legislative record" filed in connection with the original application for the restraining order. This record in-

cludes minutes and findings of the Board of Police Commissioners, general orders, a special order, and various memoranda, forms, and protocols. These materials constitute the findings upon which the program is based, as well as the procedures to be followed in the testing of sworn officers.

Plaintiff filed a brief in opposition to defendant's motion on June 30, 1989. They argue that *Von Raab* is distinguishable from the Detroit drug testing program in that the procedures are more intrusive on the officers' privacy interests and the department's need for testing is less compelling than the Customs Service's.

## III.

A hearing was held on defendant's motion on July 10, 1989. At the outset, the Court stated that consideration of the motion would be limited to the request to dissolve the temporary restraining order. At the hearing, plaintiff vigorously argued that the decision in *Von Raab* was intensely fact specific and no general rule could be drawn from the opinion. In the course of argument, the Court noted that plaintiffs' effort to draw distinctions between Customs agents and Detroit police officers subject to testing tended to trivialize the role of the sworn police officer. Both customs agents and police officers, the Court observed, have the power of arrest and the right to use deadly force under certain circumstances; and that the distinction between the two programs should not be considered in a vacuum.

Plaintiffs also argued that the specific procedures to be employed by the Detroit Police Department were so unreliable as to pose an unconstitutionally high risk of false positives. The Court responded that if the defendant's program in practice was so arbitrary and capricious as to deny officers their constitutional rights, these deprivations should be considered separately and in context. At the conclusion of the hearing the Court ordered the temporary restraining order dissolved for reasons stated on the record.

In the course of argument, plaintiff urged the Court to reject the "conclusory" decision of the Court of Appeals for the First Circuit in *Guiney v. Roach*, 873 F.2d 1557 (1st Cir.1989), which upheld random drug testing of sworn police officers of the City of Boston on the authority of *Von Raab*. In *Guiney* the First Circuit said:

The record in our case makes clear that the drug testing before us applies to police officers who carry firearms and to those who participate in drug interdiction. To this extent, since we can find no relevant distinction between a customs officer and a police officer, we hold the Police Department's drug testing rule to be constitutional.

In addition, plaintiff urged on the Court the decision of the Court of Appeals for the District of Columbia Circuit in *Harmon v. Thornburgh*, 878 F.2d 484 (D.C.Cir.1989), upholding, in part, a drug testing program for certain Department of Justice personnel. Plaintiff stated that *Thornburgh* stood for the proposition that *Von Raab* was fact specific and offered no precedential authority for the constitutionality of defendants' program as applied to sworn police officers.

Plaintiffs wrongly read *Thornburgh*. Two quotations from the decision make that clear.

Our disposition of this case is guided—and, to a large extent, controlled—by the Supreme Court's recent decisions in *National Treasury Employees Union v. Von Raab*, —— U.S. ——, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989), and *Skinner v. Railway Labor Executives' Association*, —— U.S. ——, 109 S. Ct. 1402, 103 L.Ed.2d 639 (1989) In *Von Raab*, the Court upheld the requirement that workers seeking transfer or promotion to specified positions within the United States Customs Service must undergo urinalysis. In Skinner, the Court sustained Federal Railroad Administration regulations which required blood and urine tests for train workers in the event of certain types of railway accidents. These regulations also permitted, but did not require, the testing of employees

who had been found to violate certain safety rules.

From these decisions certain general principles may be gleaned. Urinalysis, if compelled by the government, is a "search" subject to the restrictions of the fourth amendment. See *Skinner*, 109 S. Ct. at 1412–13; *Von Raab*, 109 S. Ct. at 1390. However, individualized suspicion [*9] of a particular employee is not required by the Constitution. See *Skinner*, 109 S. Ct. at 1417; *Von Raab*, 109 S. Ct. at 1390. Nor is it necessary that a documented drug problem exist within the particular work place at issue. See *Von Raab*, 109 S. Ct. at 1395 ("The mere circumstance that all but a few of the employees tested are entirely innocent of wrongdoing does not impugn the program's validity."). Rather, "where a Fourth Amendment intrusion serves special governmental needs, beyond the normal need for law enforcement, it is necessary to balance the individual's privacy expectations against the Government's interests to determine whether it is impractical to require a warrant or some level of individualized suspicion in the particular context." *Von Raab*, 109 S. Ct. at 1390; accord, *Skinner*, 109 S. Ct. at 1413–14.

The Supreme Court recognized three governmental interests which might, in appropriate circumstances, be sufficiently compelling to justify mandatory testing even in the absence of individualized suspicion. First, the government's interest in maintaining the integrity of its workforce was held to justify the testing of all Customs Service employees seeking [*10] transfer to positions involving the interdiction of illegal drugs. See *Von Raab*, 109 S. Ct. at 1393. Second, the suspicionless testing of train workers, or of Customs Service employees who carry firearms, was upheld as a legitimate means of enhancing public safety. See *Skinner*, 109 S. Ct. at 1419 ("Employees subject to the tests discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences."); *Von Raab*, 109 S. Ct. at

1393. Finally, the Court stated that the government's "compelling interest in protecting truly sensitive information," *Von Raab*, 109 S. Ct. at 1396, could under some circumstances furnish an adequate justification for the suspicionless testing of individuals whose jobs would involve access to classified materials.

.    .    .    .    .

In both *Skinner* and *Von Raab*, the Court held that the government's legitimate interest in protecting public safety could justify the suspicionless drug-testing of some employees. The Department contends that the duties of workers covered by the OBD Plan raise comparable public safety concerns. We do not agree.

Certainly a blunder by a Justice Department lawyer may lead, through a chain of ensuing circumstances, to a threat to public safety. That sort of indirect risk, however, is wholly different from the risk posed by a worker who carries a gun or operates a train. The Supreme Court in *Von Raab* emphasized that

Customs employees who may use deadly force plainly "discharge duties fraught with such risks of injury to others that even a momentary lapse of attention can have disastrous consequences." [quoting *Skinner*, 109 S. Ct. at 1419] We agree with the Government that the public should not bear the risk that employees who may suffer from impaired perception and judgment will be promoted to positions where they may need to employ deadly force.... Because successful performance of their duties depends uniquely on their judgment and dexterity, those employees cannot reasonably expect to keep from the Service personal information that bears directly on their fitness.

109 S. Ct. at 1393, 1394.

The public safety rationale adopted in *Von Raab* and *Skinner* focused on the immediacy of the threat. The point was that a single slip-up by a gun-carrying agent or a train engineer may have irremediable consequences; the employee

himself will have no chance to recognize and rectify his mistake, nor will other government personnel have an opportunity to intervene before the harm occurs. *Von Raab* provides no basis for extending this principle to the Justice Department, where the chain of causation between misconduct and injury is considerably more attenuated.

### IV.

Under *Mason County Medical Association v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977), a district court in this circuit must engage in a four-part inquiry in determining the appropriateness of a preliminary injunction or temporary restraining order. It must balance

1) whether plaintiffs have shown a strong or substantial likelihood or probability of success on the merits

2) whether plaintiffs have shown irreparable injury

3) whether the issuance of a preliminary injunction would cause substantial harm to others

4) whether the public interest would be served by issuing a preliminary injunction.

Having weighed these factors, the Court concludes that dissolution of the temporary restraining order is proper. This action by the Court, of course, is not an expression of views on the wisdom of defendant's drug testing program. That determination is for the Board of Police Commissioners, as the Charter mandated policy making authority for the Detroit Police Department. Facially, the program does not violate the Fourth Amendment and therefore the Court is powerless to enjoin it.