UNITED STATES *v.* ANDERSON & Co. (No. 727).[1]

FORGINGS ADVANCED IN CONDITION.

Comparing paragraph 127, tariff act of 1897, with paragraph 123, tariff act of 1909, and especially taking into view what would appear to be a manifest legislative intention with respect to paragraph 123, as evidenced by its history, a forging is advanced in condition when the burr on the edge of the rough-forged article is removed by passing it over a grindstone, and a hoe rough forged, but so manipulated, is dutiable under pargaraph 123.

## United States Court of Customs Appeals, November 28, 1911.

APPEAL from Board of United States General Appraisers, G. A. 7243 (T. D. 31740).

[Reversed.]

*Wm. L. Wemple,* Assistant Attorney General (*Thos. J. Doherty* on the brief), for the United States.

No appearance for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The importation in this case is a diamond shaped hoe with a shank for attaching thereto a handle, in which shank is a hole apparently to aid in holding the handle in place by means of a rivet or screw to be inserted therein. Duty was assessed under paragraph 199 of the tariff act of August 5, 1909, the pertinent part of which is as follows:

199. Articles or wares not specially provided for in this section, composed wholly or in part of iron, steel, * * * or other metal, and whether partly or wholly manufactured, forty-five per centum ad valorem. .

The importers protested, claiming them to be dutiable under paragraph 123 of the same act, the material part of which is as follows:

123. * * * Forgings of iron. or steel, or of combined iron and steel, but not machined, tooled, or otherwise advanced in condition by any process or operation subsequent to the forging process, not specially provided for in this section, thirty per centum ad valorem. * * *

The Board of General Appraisers sustained the protest and reversed the action of the collector.

This cause is heard upon the record and brief of the Government, the importer not having filed any brief or made any argument before us.

No testimony was introduced before the board, except one witness on behalf of the importers. Therefrom it appears and the board found that these hoes are first rough forged from steel bars and then the burr which is left on the edge of the hoe by the forging process is removed by passing it over a grindstone. The hoes were not further manipulated, but were dipped in oil prior to being shipped.

In sustaining the protest, as appears from its decision, the board held that the reasoning of this court in the case of Prosser *v.* United States (1 Ct. Cust. Appls., 550; T. D. 31551) was controlling. In that case the statute especially construed was paragraph 127 of the

tariff act of July 24, 1897, the material part of which for the purposes of this case is as follows:

127. * * * Forgings of iron or steel, or of combined iron and steel, of whatever shape or whatever degree or stage of manufacture, not specially provided for in this act, thirty-five per centum ad valorem. * * *

In that case we held in substance that, with the development of improved methods and high-class machinery, it had been found more economical and that better and speedier results could be obtained by not trying to forge close or to remove from a forging in the forge shop surplus metal from a part thereof not readily accessible; that the rough turning or rough machining to which the merchandise involved in that case had been subjected was a substitute rather than an additional process, and was designed to finish the forging as such and not to complete the article evolved thereby; and that a forging as commonly understood might be defined to be a creation of forging processes; an article of metal shaped or formed by hammering or allied methods producing substantially the same results as hammering.

The Board of General Appraisers in this case, as appears from its decision, invoked that definition of forging and held that the work performed on the importations here was not other than forging work, and that they had not been advanced by processes other than forging and were, therefore, entitled to be so classified under paragraph 123.

We think in so applying the reasoning of the Prosser case the board, probably inadvertently, failed to give full force to the changes in paragraph 127 of the act of 1897 as the same appear in paragraph 123, above quoted. It will be noted that under paragraph 123, if a forging has been machined, tooled, or otherwise advanced in condition by any process or operation subsequent to the forging process it is not classifiable thereunder, while paragraph 127 of the act of 1897 provided that forgings of whatever degree or stage of manufacture should still be so classified.

In the Prosser case we undertook to say in substance that substituted processes which had for their sole purpose the removing of the surplus metal from rough forgings, when it appeared that such processes were applied because greater economy and better results could be obtained, did not deprive the article of its character as a forging.

We think, however, that Congress, by the enactment of paragraph 123, clearly determined that such a substituted process would take the article out of the classification as a forging if thereby it was advanced in condition, because it declares in effect that if machined, tooled, or otherwise advanced in condition by any process or operation subsequent to the forging process it shall not be so classified.

Now, in the case at bar, it is conceded that the merchandise has been subjected to a process or operation subsequent to the forging process in that the burr on the edge of the tool has been ground off upon a grindstone.

It is apparent that by the removal of the burr on the edge of the hoes in question by the grinding process after the forging processes

have been applied, these hoes have been advanced in condition because it is evidently desirable for their ordinary and most advantageous use that such burr should be removed. It is the final step in the processes of this manufacture.

Congress would seem to have intended by paragraph 123 that it should be a question of fact as to whether any process subsequent to that of forging had been used, and if so, the article would be deprived of its right to be classified as a forging if by such subsequent process it had been advanced in condition. It is not, we think, an answer to this to say, as is said in this case, that the forging processes might have been applied to have produced the same result as the grinding; the question is, what processes in fact have been employed in producing the article, and if it appears, as here, that a process other than forging has been subsequently used and the condition thereby advanced, then the article no longer has a right to be classified as a forging. In other words, Congress has seen fit to make that the test.

It is true that the manufacturer may, by the methods employed in manufacturing an article, determine its classification, but that is not a novel doctrine. In United States v. Meadows (2 Ct. Cust. Appls., 143; T. D. 31665), which, among other things, involved the question of whether cotton or leather was the component material of chief value of certain slippers, we held in substance that it was proper to inquire into the chronological order in which the component materials were united; that it did not matter if it appeared that by the adoption of a different order in combining the materials a different classification would have resulted; that the question in each case would among other things be determined upon the fact as to when—that is, in what order—the combination was made; that a manufacturer might find it on the whole to be to his advantage, in view of the results obtained, to make a combination in such a way chronologically as would effect the classification, and that he could do so at his own option.

This observation is especially applicable to the case at bar, for it appears from the evidence that although it is possible for the manufacturer to take the burr off from the edge of the hoe with a forge hammer instead of by the grinding process, yet it would cost ten times as much to do it that way; and it may be that on the whole it is commercially more advantageous for the manufacturer to produce these hoes so that they pay the higher rate of duty rather than to incur the greater expense of turning them out by the forging process so that they may take the lower one.

There is another reason, we think, which requires that paragraph 123 be given the construction we have indicated. At the time the act of 1909 was enacted the Prosser case above referred to was pending, and not only in that case but in others theretofore decided there had been much difficulty and disagreement as to the construction to be given paragraph 127 of the act of 1897. The attention of Congress was directed to this matter in "Notes on Tariff Revision,"

prepared for the use of the Committee on Ways and Means in making up the tariff act of 1909, where it appears that some of the decisions on the subject of what were forgings were referred to, the respective claims of the Government and the importers relating thereto succinctly set forth, and an amendment of paragraph 127 was suggested which it was thought stated precisely in what degree of finishing or completion forgings might be imported without being construed as advanced from the class of forgings for tariff purposes. Congress adopted the amendment in the precise language as suggested by the compiler of the work. (See Notes on Tariff Revision, p. 154.)

We think thereby it accomplished that object and that it is plain that thereunder it is a question of fact whether or not an article has been advanced in condition by machining, tooling, or by any other process or operation subsequent to the forging process, and that when it so appears the article can not longer be classified as a forging.

We hold, therefore, that the board erred in sustaining the protest in this case, and its judgment is *reversed*.