KEITH DUNHAM CO. *v.* UNITED STATES (No. 4178)[1]

---

[1] C. A. D. 24.

United States Court of Customs and Patent Appeals, December 5, 1938

*Walden & Webster (J. L. Klingaman* of counsel) for appellant.
*Webster J. Oliver*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney, of counsel), for the United States.

[Oral argument October 4, 1938, by Mr. Klingaman and Mr. FitzGibbon]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

JACKSON, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court which overruled the claims of the protests of appellant and held the imported devices invoiced as "oxygen jet hand cutting machines," or "secators" and parts thereof, to be properly assessed for duty by the collector under paragraph 353 of the Tariff Act of 1930, at 35 per centum ad valorem. The opinion below held the merchandise to be portable tools, having as an essential feature an electrical element or device, and not dutiable, as claimed by the appellant, under paragraph 372 of the said act at 30 per centum ad valorem as machine tools.

The "secator" as imported, consists of a compact box which contains an electric motor, a tachometer, which measures the speed of the device as it is propelled by the motor; a rheostat which regulates the amount of electric current supplied to the motor, and a switch to turn the electric current on and off. Essential parts which enable the device to function, which were not imported with it, are tubes through which oxygen and acetylene gases are conveyed; a torch to be attached to the front left side of the device, and an electric cord extension to be plugged into an electrical outlet. The said gases come under pressure into the said tubes from tanks. When the assembly of the imported article and parts has been made, the "secator" is complete for its normal function of cutting through metal plate on a predetermined line by means of an oxy-acetylene flame, emanating from the torch. It will be observed that the imported article is only a part of the complete device.

The pertinent provisions of the competing paragraphs are as follows:

PAR. 353. * * * articles having as an essential feature an electrical element or device, such as electric motors, fans, locomotives, portable tools, furnaces, heaters, ovens, ranges, washing machines, refrigerators, and signs;
* * * all the foregoing, and parts thereof, finished or unfinished, wholly or in chief value of metal, and not specially provided for, 35 per centum ad valorem.

PAR. 372. * * * lawn mowers and machine tools, 30 per centum ad valorem; * * * *Provided*, That parts, not specially provided for, wholly or

in chief value of metal or porcelain, of any of the foregoing, shall be dutiable at the same rate of duty as the articles of which they are parts: *Provided further*, That machine tools as used in this paragraph shall be held to mean any machine operating other than by hand power which employes a tool for work on metal.

The only witness who testified at the trial was produced by the appellant. He stated the operation of the device to be as follows:

Well, we take the machine. We put it on a piece of plate and we have a line in which we want to cut a piece of steel. There is attached a torch, an oxy-acetylene torch, and there is a motor that turns this machine which impulses the torch along the line in a very precise manner. We light the torch to bring the metal to the proper heat. We turn the motor on that is in this particular machine and the cutting process takes place as this machine moves down the line in a straight manner or in a circle or in any other shape which you may wish.

Judge TILSON. What predetermines the line it makes, whether it is circular or straight?

The WITNESS. That is either done on a track on an arm in the center, or on a template which the machine follows on its own power.

Judge TILSON. Do you control the movement of that machine with your hand, or does it have a certain track that if moves on?

The WITNESS. Not unless the lines are so intricate that a template cannot be made to get around such a short corner. But with a regular arc or curve or a straight line the machine will work on its own power without any handling of it at all.

The only other evidence in the case is a catalog showing a picture of the complete device.

There is no dispute but that the electric motor contained in the device is an essential element in its use and the record discloses that the torch does not touch the metal sought to be cut, but merely points the flaming gases which burn through metal plates.

The witness testified on cross-examination that he had operated the "secator" himself and took it "to the work to use it." He also said, "Well, the machine is not so big we cannot carry it from one place to another." While he did state that his customers "have a particular corner where such work is done," in answer to the next question "But this is movable or portable?" he said, "Oh, sure."

On this record the court below found the following facts:

1. That the imported device, invoiced as "secator," is a mechanical contrivance which utilizes and applies electrical energy in the transmission of motion.

2. That the device contains as an essential feature an electric motor.

3. That it is operated by other than hand power, to wit, by electric motor.

4. That it employs a tool, to wit, the acetylene torch, for work on metal.

5. That it is portable.

Based upon these findings the court then stated:

The established facts make it at once apparent that the imported device is both a machine tool as that term is statutorily defined, and an article having as an essential feature an electrical element or device. But the question is: Which of the two provisions is the more specific? If the machine were not portable, we would be inclined to classify it under the provision for machine tools in said

paragraph 372, as alleged by the plaintiff. But it is a portable tool which contains as an essential feature an electric motor. While it is true that the congressional definition of a machine tool is restricted to the kind of machine mentioned which employs a tool for work on metal, and there is no such limitation on the portable tools provided for in said paragraph 353, nevertheless the provision for portable tools that have as an essential feature an electrical element or device, to wit, an electric motor, in our opinion, is the more specific provision for the imported article.

It is contended here by appellant that the imported articles are not portable tools but that even assuming that the trial court was correct in holding them to be portable tools, the term "machine tools" is more specific.

The question to be decided is whether the device is a machine tool (as defined by Congress) or a portable tool within the provisions of paragraph 353, *supra*.

We are of opinion that the "secator" is not a machine tool as defined by the Congress. That it is a machine we have no doubt, since it is clearly shown by the record to be a mechanical contrivance which utilizes electric energy for the transmission of motion. *Simon, Buhler & Baumann* v. *United States*, 8 Ct. Cust. Appls. 273, T. D. 37537; *United States* v. *Janson Co.*, 16 Ct. Cust. Appls. 315, T. D. 43075. Both parties to the litigation agree that the "secator" is a tool.

The meaning of the statutory definition of "machine tools" in paragraph 372, *supra*, is not free from ambiguity. Accordingly we may consult the history of the act. As Justice Butler pointed out in *United States* v. *Missouri Pacific Railroad Co.*, 278 U. S. 273, 278:

Where doubts exist and construction is permissible, reports of the committees of Congress and statements by those in charge of the measure and other like extraneous matter may be taken into consideration to aid in the ascertainment of true legislative intent.

The use of Summaries of Tariff Information as an aid in ascertaining legislative intent has long been the custom of this court. *United States* v. *Anderson & Co.*, 2 Ct. Cust. Appls. 350, T. D. 32080; *American Import Co.* v. *United States*, 25 C. C. P. A. (Customs) 231, T. D. 49337. Logic and reason support this procedure. These summaries are specially prepared primarily for the use of the Committee on Ways and Means and the Committee 'on Finance during the course of tariff legislation. They are made by disinterested experts and may be examined by us to assist in ascertaining the intent of Congress.

The legislative history of paragraph 372 of the Tariff Act of 1930 supports our belief that the "secator" is not a machine tool in a tariff sense. The congressional definition of "machine tools" appeared for the first time in paragraph 165 of the tariff act of 1913 and has been carried word for word into the subsequent Tariff Acts of 1922 and 1930.

In the Summary of Tariff Information, 1920, pages 264, 265, we find under the title "General Information" the following description of machine tools with reference to paragraph 165 of the tariff act of 1913:

*Description.*—The machines enumerated in this paragraph are certain specialized types producing widely varying commodities or utilities. The term *machine tools* has no very definite or fixed meaning. There is one class of power-driven machines designed to produce only one article in great numbers with a considerable degree of automatic action, as screw-making machines, bolt threaders, nut tappers, gear cutters, and spring-making machines. They usually turn out a completed product or one requiring little subsequent finishing. These are styled *special machines.*

The other class, properly called machine tools, consists of power-driven forming or shaping machines which are not special, but are adaptable for all kinds of work within their classes on all shapes of metal stock or raw material. Machine tools are so defined in the act of 1913 as to include both these classes.

Machine tools are also discussed in the Summary of Tariff Information, 1929, at page 812, as follows:

MACHINE TOOLS

*Description and uses.*—Machine tools are more or less massive apparatus for working metal. The principal parts of the machine tool are the frame, the driving mechanism, the device for holding or moving the material or tool, and the actual tool that shapes the material being worked. Typical basic machine tools are the lathe, which revolves the work while a cutter is held against it; the planer, which moves the work forward and back under a planing tool; the drilling machine for drilling holes; the miller, in which the work is shaped by the action of revolving toothed cutters, and the grinding machine, in which abrasive wheels are used to remove metal. * * *

In addition to what has been said, the cutting of steel plate by means of oxy-acetylene flame was well known in the metal industry long before the Tariff Act of 1930 became a law. We find in the 1927 edition of Thorpe's Dictionary of Applied Chemistry, Vol. I, at page 55, the following:

*Acetylene Welding and Metal Cutting.*—Acetylene is largely employed for autogenous welding and for metal cutting; in the latter case extra oxygen being supplied so that the metal itself is burnt away. * * *

There are two systems of operating; in the high pressure system the oxygen is delivered from an ordinary cylinder under pressure and the acetylene, dissolved in acetone under pressure, is also supplied from cylinders. Both cylinders are fitted with special governors, as a perfect regulation of the flame is one of the main conditions of success. This system has the *great advantage of a portable outfit,* and can be applied in confined spaces, but it is more expensive than the alternative system. [Italics supplied.]

We believe that if the Congress had intended machine tools to include a power-driven machine employing a flame spraying blowtorch for work on metal it would have so expressed itself. Therefore, in view of what has been herein set forth we hold that the imported merchandise is not a machine tool as defined in paragraph 372, *supra.*

In its contention that the "secators" are not portable tools, appellant urges that the record:

merely shows that they are of such size and weight that they can be moved around. Obviously in use one would set up his tanks of acetylene and oxygen at some convenient place, attach the instruments thereto, and do the work at that place. The portability of the tool would be limited by the length of the hose connecting same with the tanks containing the acetylene and oxygen. They are not portable in the sense that an electric soldering iron is, for instance.

With this reasoning we cannot agree. The fact that the article is light and of small size and can be, and is, moved around from place to place to be operated is proof of its portability. The setting up of the tanks does not remove the device from the class of portable tools. The argument as to the length of the hose we do not consider of importance. As a matter of fact, portable electric tools, such as soldering irons, drills, screwdrivers, etc., have extension cords of various lengths. Should the outlet to which these wires are plugged be a longer distance from the work than the attached extension would reach, a longer extension would unquestionably be used. The same reasoning applies to the tubes connecting the gas tanks with the "secator."

Appellant in its brief argues that portable tools must be actuated *solely* by compressed air. In support of this contention it quoted to that effect from Nelson's Encyclopedia 1918 Edition, Vol. XII, page 111. From an examination of the quoted authority we are convinced that the author never intended to confine portable tools to those actuated *solely* by compressed air. Furthermore, other authority contradicts appellant's contention. Vol. 27, 28 of the Encyclopedia Britannica Eleventh Edition 1911 at page 21 defines portable tools as follows:

*Portable Tools.*—This large group can best be classified by the common feature of being readily removable for operation on large piece of erection that cannot be taken to the regular machines. Hence they are all comparatively small and light. * * *

In Vol. 14 of the Encyclopedia Britannica Fourteenth Edition 1929 at page 580 we find:

*Portable Machine Tools.*—Machine tools are ordinarily fixed to a floor, and the work is brought to them; but very big castings or forgings, machinery that has to be repaired, altered or put together in situ, etc., often cannot satisfactorily be treated in this way, and in such cases it is usually quicker, easier and cheaper to employ a portable machine that can be bolted to the work, or supported closely to it in position for cutting. Parts of large engine beds and frames and of electrical machinery and turbines are conveniently drilled, bored, tapped, milled, planed, shaped, slotted, or ground by appropriate machines, driven with flexible shafts or electric motors.

The distinguishing characteristic of a portable tool is that it is capable of being carried to the work. The type of power used is no

·criterion. It is a matter of common knowledge that electricity is now the most generally used energy as an impulsing agent. We do not, therefore, agree with the appellant's contention that to constitute a mechanically driven portable tool it must be operated by means of ·compressed air.

The "secator" might well be a machine tool in the common acceptation of that term. It is a machine and both litigants agree that it is a tool. Therefore, it is a machine tool as that term is ordinarly used. But Congress has specifically defined a machine tool in paragraph 372, *supra*. As we have previously pointed out, the "secator" is not a machine tool within the definition set out by the Congress. The record discloses that the "secator" contains as an essential feature an electrical element or device and there is also conclusive proof that the ·device is portable. We can reach no other conclusion than that the ·"secator" is a portable tool, and the imported merchandise, being a part thereof, was properly assessed for duty under paragraph 353 of the Tariff Act of 1930.

In view of our holding herein the cases cited in the brief of appellant ·are not pertinent and need no comment.

For the reasons stated, the judgment appealed from is *affirmed*.