(C.D. 3522)

E. DILLINGHAM, INC.
WALTERS AXE Co., INC. } *v.* UNITED STATES

United States Customs Court, Second Division

(Decided on rehearing [C.D. 2452] July 24, 1968)

*Sharretts, Paley, Carter & Blauvelt (Eugene F. Blauvelt* and *M. Barry Levy* of counsel) for the plaintiffs.
*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Samuel D. Spector* and *Bernard J. Babb*, trial attorneys), for the defendant.

Before RAO and FORD, Judges, and OLIVER, Senior Judge

OLIVER, Judge: The protests designated above were consolidated for trial and were the subject of a decision in *E. Dillingham, Inc.*, and *Walters Axe Co., Inc.* v. *United States*, 52 Cust. Ct. 147, C.D. 2452. On a motion for rehearing, plaintiffs' application was granted. *Same* v. *Same*, 53 Cust. Ct. 253, Abstracts 68735.

The merchandise herein is steel axe heads, which were classified by the collector of customs as cutting tools, not specially provided for, under paragraph 396 of the Tariff Act of 1930, as modified by T.D. 52373 and T.D. 52462, and assessed with duty at $22\frac{1}{2}$ per centum ad valorem.

The plaintiffs claimed that the merchandise is properly dutiable under paragraph 319(a) of the Tariff Act of 1930, as modified by T.D. 54108, as forgings of iron or steel, not machined, tooled, or otherwise advanced in condition by any process or operation subsequent to the forging process, at the rate of $10\frac{1}{2}$ per centum ad valorem.

The court held that the axe heads were not forgings within the purview of paragraph 319(a) since they had been subjected to a process, after forging, which advanced them beyond forgings. The classification was affirmed, but not approved, in that the court ruled the axe heads in their imported condition lacked cutting qualities.

On the rehearing, plaintiffs moved to amend their protests to include a claim under paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108, as articles, not specially provided for, wholly or in chief value of steel, at 19 per centum ad valorem.

Paragraph 396 of the Tariff Act of 1930, as modified by T.D. 52373 and T.D. 52462:

Drills * * * other cutting tools; all the foregoing,
if hand tools not provided for in paragraph 352,
and parts thereof, wholly or in chief value of metal,
not specially provided for_____ 22½% ad val.

Paragraph 319(a) of the Tariff Act of 1930, as modified by T.D. 54108:

Forgings of iron or steel, or of combined iron and
steel, not machined, tooled, or otherwise advanced
in condition by any process or operation subse-
quent to the forging process, not specially pro-
vided for_____ 10½% ad val.

Paragraph 397 of the Tariff Act of 1930, as modified by T.D. 54108:

Articles or wares, not specially provided for, whether partly or wholly
manufactured:

 * * * * * * *

Composed wholly or in chief value of iron, steel,
copper, brass, nickel, pewter, zinc, aluminum,
or other base metal (except lead), but not
plated with platinum, gold, or silver, or
colored with gold lacquer:

 * * * * * * *

Other, composed wholly or in chief value
of iron, steel, * * *_____ 19% ad val.

At the trial, the following exhibits were introduced in evidence:

Plaintiffs' exhibits 1, 2, and 3 illustrate the merchandise in its condition upon arrival in the United States.

Plaintiffs' exhibit 4—sample of a billet or bar from which merchandise, such as exhibits 1, 2, and 3, is fabricated.

Plaintiffs' exhibit 5—finished product resulting from processes applied to exhibit 2 subsequent to importation.

Plaintiffs' exhibit 6—illustrates exhibit 2 after it has been completed by processes subsequent to its importation, with handle permanently attached.

John E. Hammell, a well-qualified witness and the only witness in the case, testified for the plaintiffs. His testimony is set forth in full in the reported case, *supra*. We make reference now only to those facts of record which are deemed pertinent on this rehearing. Mr. Hammell outlined the successive steps in the forging operations which resulted in exhibits 1, 2, and 3. These apparently are rough axe heads which were imported in the condition as we see them before us. They were produced as follows, according to the witness: Starting with a bar or billet (represented by plaintiffs' exhibit 4), heat is applied at a tem-

perature of approximately 2,150 degrees Fahrenheit. The metal is then subjected to a pounding by a drop hammer, weighing about 3,000 pounds, to a desired shape, such as exhibit 2.

Next is an operation in what is known as a punch press, by which the excess metal that accumulates around the edges of the drop die cavity is sheared off. The article is then placed in what is referred to as a forging upset machine, by means of which the "eye" of the forging is pierced while the metal is still hot. The resulting product is in the form of exhibit 2, except that, before shipment to the United States, another operation is performed to remove any sharp burrs or slivers of steel resulting from the forging operations. This is done by a grinding operation on a stone.

This last operation of grinding on a stone to remove the sharp burrs or slivers of steel resulting from the forging process presents the issue for our determination. Does this step constitute an advance in condition by a process or operation on the roughly forged axe heads subsequent to the forging process within the meaning of paragraph 319(a) of the Tariff Act of 1930, *supra*? Or, is this only a further essential manipulation of the crude object, performed prior to its acquiring status as a merchantable forging? In the latter event we would consider this step of grinding integral to the forging operation itself. Obviously it could not then be said that the grinding constituted either an advance in condition or an operation subsequent to the forging process.

After outlining the forging operations at the trial, the witness added (R. 16):

Q. These operations that you have described, do they have a generic name in the trade, in the industry?—A. Well, I think they are all classified as a forging operation. I am definite of that. They are all forging operations.

Q. Is anything further done to Exhibit 2 before it is shipped to the United States?—A. Yes, the only other operation is to take off any sharp burrs, because sometimes we get needle-sharp slivers of steel coming out from the shearing and the forging operations, and this is just done once over a stone to remove any sharp edges that would possibly sever a man's finger.

Q. Is that the only purpose of that operation?—A. That is the only purpose, because they are then finished, everything else is done in the United States.

The above testimony portrays the operation, the significance of which we must determine.

Counsel for the defendant cites an early case, *Saltonstall v. Wiebusch*, 156 U.S. 601 (1895), wherein controversy arose over an imported consignment of certain carpenters' pincers, scythes, and grass hooks

which had been manufactured by a forging process and then further processed. They were held properly classifiable as manufactures of metal, rather than as forgings, under the provision in the Tariff Act of 1883, which provided for "forgings of iron or steel, or forged iron, of whatever shape, or in whatever stage of manufacture, not specially enumerated or provided for in this act." The Supreme Court stated the following at page 603:

* * * we do not understand the term "forgings" to be applicable to articles which receive treatment of a different kind than hammering before they are complete; such, for example, as grinding, tempering, or polishing, although the witnesses agreed that welding and punching are properly forging processes. . . . The fact that the further process, which the articles specified in this case underwent, represented but three or four percent of the total labor expended upon them, is by no means decisive, when it is a question of classification, since the very object of Congress may have been to protect the additional labor. The lines between different articles enumerated in the tariff law are sometimes very nicely drawn, and a trifling amount of labor is often sufficient to change the nature of the articles, and determine its classification. * * *

It was the opinion of the Court, even in the face of the tariff provision's broad language as compared to the pertinent provision of paragraph 319 (a), *supra*, that any operation which was performed on a forging subsequent to the forging process, and which advanced its condition, removed the article subjected thereto from the category of forgings for classification purposes.

Difficulties arose regarding the interpretation of the statutory provision for forgings, which was reenacted in similar language in paragraph 127 of the Tariff Act of 1897, and in the Tariff Act of 1909. The language of the forgings provision (paragraph 123) was changed to what it is in paragraph 319 (a), *supra*, in order to clarify any interpretive confusion as to what constitutes forgings for tariff purposes. In the *Notes On Tariff Revision*, 1908, the following was reported on forgings to the House Ways and Means Committee for consideration in connection with the Tariff Act of 1909 at page 154:

*Forgings*

* * * * * * *

COMMENTS AND SUGGESTIONS—
The contention between the Government and the importers is as to the interpretation of the phrase, "forgings * * * of whatever shape or whatever degree or stage of manufacture;" the former insisting that this refers only to various steps or stages of heating, pressing, or hammering in the process of forging, and that work bestowed on forged articles after the completion of the forging process advances them beyond the class of goods known as forgings. On the other hand, the importers' claim is that this provision includes forged articles that

have been turned, or drilled, or punched, or finished, or otherwise machined.

The chief difficulty in this case arises from the varying interpretations put upon the decision of the Supreme Court in the case of *Saltonstall* v. *Wiebusch* (156 U.S. 601), decided under the act of 1883. It is suggested that this provision be amended so as to state precisely in what degree of finishing or completion forgings may be imported without being considered as advanced from the class of forgings for tariff purposes.

It is clear from the last sentence of the foregoing that the *Saltonstall case*, *supra*, is of little help in the case at bar since the remedy there suggested is the very problem now before us.

In *United States* v. *Anderson & Co.*, 2 Ct. Cust. Appls. 350, T.D. 32080, discussed by both counsel in their briefs, the merchandise was a diamond shaped hoe with a shank for the handle. A hole was made in the shank to aid in holding the handle by means of a screw or rivet. The hoes were first rough forged from steel bars. A burr left on the edge of the hoe by the forging process was then removed by passing it over a grindstone. The court held the hoe was advanced in condition by a process subsequent to the forging process, and affirmed the classification of the collector as articles in chief value of metal, not specially provided for.

Apparently the court here followed the reasoning in the *Anderson* case, *supra*, in disposing the issue at bar adversely to the plaintiffs, holding that the grinding process on the axe heads was an advance in condition subsequent to the forging process.

The plaintiffs here, however, attempt to distinguish the *Anderson* case, arguing that the grinding operation there was the final step in the process of manufacture of the hoe. The court stated at 2 Ct. Cust. Appls. 351, 352:

It is apparent that by the removal of burr on the edge of the hoes in question by the grinding process after the forging processes have been applied, these hoes have been advanced in condition because it is evidently more desirable for the ordinary and most advantageous use that such burrs should be removed. It is the final step in the processes of this manufacture.

In arriving at its decision in the case at bar, the court examined *Ford Motor Co.* v. *United States*, 19 CCPA 69, T.D. 44897, wherein the *Anderson* case, *supra*, was cited and followed. In the *Ford* case, the Ford Motor Company exported from the United States certain large rough iron and aluminum castings to Canada for the sole purpose of having them subjected to a "profiling operation," which consisted of grinding off excess material, and smoothing them with grindstones and files. They were then reimported to the United

States. The court held this profiling operation a manufacturing process, the sole purpose of which was to improve the castings in condition and advance them in value.

The *Ford* case, however, in our opinion, presented a clear-cut further step in manufacture, even to the point that such step was specially isolated to Canada for its performance. The resulting advance in value is readily recognized, hence of little aid here.

The plaintiffs contend that the situation in the instant case differs from both the *Anderson* and the *Ford* cases, *supra*, and that the grinding off of dangerous excrescences is not an advance in the tariff sense. The only purpose of the grinding here was to remove any sharp edges and slivers which in handling could sever a man's finger. In such condition, therefore, it is our opinion that this was still rough material, requiring further manipulation before it could be termed a forging, advanced. This manipulation, even though it should advance the material towards its intended or ultimate use, would be merely incidental in creating the forging, thus constituting an operation still a part of the forging process. Such an incidental advancement we do not consider an "operation subsequent to the forging process" within contemplation of paragraph 319 (a), *supra*. See *National Lead Co.* v. *United States*, 51 Cust. Ct. 13, 21, C.D. 2407, and pertinent cases cited therein.

The grinding on the hoe in the *Anderson* case was a finishing operation, a further step in its manufacture. There was no other purpose than to improve its condition for use and this the court held constituted an advance. The axe heads at bar present a different situation. The burrs were dangerous excrescences which rendered them hazardous to handle, ship, or use. They had to be disposed of by some means before the object acquired status as a merchantable forging. In our opinion, the plaintiffs' point is well taken that grinding on the hoe was a final step in manufacture, whereas grinding on the rough axe head for safety sake was an intermediate step in the creation of a forging. It was a part of the forging process, not a step in manufacture.

It is apparent from both the *Saltonstall* case, and the *Anderson* case, *supra*, that the varying interpretations of the term "forgings" were in need of further clarification for tariff purposes. In the *Saltonstall* case the Supreme Court itself suggested that the forgings provision be amended to state precisely to what degree of finishing or completion forgings may be without being considered as advanced in condition in the tariff sense.

The trend in later cases on the subject of advances added some clarification of the degree to which an article might be processed before it could be considered as advanced in condition. On this point the

plaintiffs cite a recent case, *American Mannex Corp.* v. *United States*, 56 Cust. Ct. 31, C.D. 2608, in which other pertinent cases are cited and analyzed. In the *American Mannex* case the question concerned rolled steel oil well casing pipe which in the manufacturing process emerged with jagged, irregular ends. These had to be cut off before being shipped. In this cutting, the ends were beveled because the threading machine thereafter would receive the pipe more easily on the taper at the end.

The court stated:

\* \* \* It follows that certain manipulations after rolling, incident to making the rolled shape merchantable and fit for shipment, do not constitute "advance" within the congressional intent. \* \* \*

After noting that the cutting was primarily done to "get rid of useless excrescences," the court held that:

\* \* \* cutting a rolled steel oil well casing *to remove excrescent ends is not* "advance" beyond rolling \* \* \*. [Emphasis added.]

Although the cited cases concerned structural shapes, the principle was clear that the cutting off of the jagged edges constituted a step in the *creation* of the pipe, and that there could be no advancement until first the pipe was created.

\* \* \* No step required for the creation of a structural shape under paragraph 312 as modified can, at the same time, be an advancement of a structural shape under the same paragraph. [*United States* v. *Baron Tube Co. et al.*, 47 CCPA 69, 72, C.A.D. 730.]

The defendant, on the rehearing at bar, reiterates his argument that the axe heads, in their condition as imported, were dedicated to use as axes or cutting tools and that the collector properly classified them as cutting tools under paragraph 396, as modified by T.D. 52373, *supra*. The court rejected this argument, citing *The Singer Manufacturing Company* v. *United States*, 22 Cust. Ct. 21, C.D. 1152, affirmed in *United States* v. *The Singer Manufacturing Company*, 37 CCPA 104, C.A.D. 427. That case was referred to in the original decision of the instant case at page 151 of 52 Cust. Ct. 147, *supra*. The question involved in the *Singer* case concerned the dutiable classification of castings of iron in their first estate as such, not having been machined or otherwise processed since being cast, and not having been "made up into articles, or parts thereof, or finished machine parts," within the meaning of paragraph 327 of the Tariff Act of 1930. This court there stated:

\* \* \* We deem it of no particular significance that the various castings bear indications of their ultimate use for the simple reason

that so far as we are informed substantially all castings of iron are fabricated from predetermined patterns which naturally suggest their intended use.

The same is equally true of the forging process. If castings and forgings were to be treated for tariff purposes as the unfinished articles their shapes indicate, then there would be little need for provisions for castings and forgings in the tariff act.

We are in accord with the reasoning in the *Singer* case, and find the collector's classification as cutting tools was in error. This affirms the finding of the court on this point.

The principles enunciated in the *American Mannex* case, *supra*, and the cases analyzed therein, we consider pertinent to the axe head forgings in the case at bar. In our opinion, grinding off the dangerous excrescenses was a step required in the *creation* of the axe head forgings and, therefore, is not an advance in condition, nor an operation performed *subsequent* to the forging process within the congressional intent. The grinding process was a manipulation incident to creating a merchantable forging, fit for handling and shipment, and is part of the forging process.

Based on the foregoing, we are now of the opinion that the merchandise at bar consists of forgings of iron or steel, not machined, tooled, or otherwise advanced in condition by any process or operation subsequent to the forging process, dutiable at 10½ per centum ad valorem under paragraph 319(a) of the Tariff Act of 1930, as modified by T.D. 54108. The claim in the protests to that extent is sustained.

Judgment will be entered accordingly.