(C.D. 4264)

EDWARD W. DANIEL COMPANY v. UNITED STATES

United States Customs Court, Second Division

(Decided September 10, 1971)

*Allerton deC. Tompkins* for the plaintiff.

*L. Patrick Gray, III,* Assistant Attorney General (*Velta A. Melnbrencis* and *James Caffentzis,* trial attorneys), for the defendant.

Before RAO, Chief Judge, FORD and NEWMAN, Judges

NEWMAN, Judge: The issue in this case concerns the proper rate of duty on certain articles imported from West Germany in 1967, invoiced as "Plain Eye Bolts" and "Shoulder Eye Bolts".[1] The merchandise was assessed with duty by the district director of customs at the port of Cleveland, Ohio at the rate of 19 per centum ad valorem under the provision in item 657.20 of the Tariff Schedules of the United States (TSUS) for "Other" articles of iron or steel, not coated or plated with precious metal.

Plaintiff claims that the merchandise is properly dutiable at the rate of 10.5 per centum ad valorem under the provision in item 608.25, TSUS, for forgings of iron or steel (other than alloy iron or steel), not machined, not tooled, and not otherwise processed after forging.

STATUTES INVOLVED

Tariff Schedules of the United States:

Classified under:

Schedule 6, Part 3, Subpart G:

Articles of iron or steel, not coated or plated with precious metal:

\*        \*        \*        \*        \*        \*        \*

---

[1] Plaintiff abandoned its protest respecting merchandise invoiced as "drop forged screw pin Anchor Shackles, hot galvanized", and accordingly the protest is dismissed as to those items.

657.20 Other_____ 19% ad val.

Claimed under:

Schedule 6, Part 2:

Part 2 headnotes:

1. This part covers precious metals and base metals (including such metals when they are chemically pure), their alloys, and their so-called basic shapes and forms, and, in addition, covers metal waste and scrap. Unless the context requires otherwise, the provisions of this part apply to the products described by whatever process made (i.e., whether rolled, forged, drawn, extruded, cast or sintered) and whether or not such products have been subjected to treatments to improve the properties or appearance of the metals or to protect them against rusting, corrosion or other deterioration. These treatments include annealing, tempering, case-hardening and similar heat-treatments or nitriding; descaling, pickling, scraping, scalping and other processes to remove oxidation scale and crust; rough coating with oil, tar, grease, red lead, or other material to prevent rusting; polishing, burnishing, glazing, artificial oxidation, phosphatizing, and other finishing treatments; metallization by cementation, by electroplating, by immersion in a bath of molten metal, or by other means; coating with enamel, paint, lacquer, or other non-metallic substances; and cladding. This part does not include—

\* \* \* \* \* \* \*

Schedule 6, Part 2, Subpart B:

Forgings of iron or steel, not machined, not tooled, and not otherwise processed after forging:

608.25    Other than alloy iron or steel_____ 10.5% ad val.

## THE RECORD

At the trial, plaintiff presented the testimony of Edward W. Daniel (its president), and submitted six exhibits. The official papers were received in evidence without marking. Defendant offered no evidence.

Mr. Daniel had been engaged in various phases of the forgings business since 1914, including purchasing, manufacturing, selling and fabricating, the latter activity constituting his line of business at the time of importation. His testimony establishes that the imported articles were produced as follows: Steel bars (other than alloy steel) were sheared or cut to the desired length; these bars were then heated to a temperature of 2100 to 2300 degrees Fahrenheit and shaped under a drop forging hammer; the shaped material was then punched and trimmed in a forge trim press to remove excess metal referred to as "flash"; the forgings were then tumbled or sandblasted to remove slivers, burrs and rough scale, and finally normalized.

"Normalizing" was described by Daniel as a "manufacturing forging process whereby [the material is heated to about 1200 degrees] to

relieve stresses and strains that might have been developed during forging". The witness further stated that normalizing was a "manufacturer's prerogative", and usually would be performed if water was on the drop forge hammer; that normalizing may be performed anytime after the steel is formed in the drop hammer; and that normalizing is part of the forging operation.

## THE ISSUE

There is no doubt that the imported articles are "forgings"; and the sole issue is whether such forgings were "otherwise processed after forging" within that exclusionary language in item 608.25 by virtue of the fact that the forgings had been sandblasted and normalized.

## 1.

In construing the exclusionary phrase in item 608.25, "not otherwise processed after forging", we first consider the meaning of the verb "forging". That term is defined in *Metals Handbook*, American Society for Metals, Volume 1, Eighth Edition (1961), at page 111:

> FORGING is the process of working hot metal between dies, usually under successive blows and sometimes by continuous squeezing. Closed-die forgings or "drop forgings", hot upset parts, and extrusions are shaped within a cavity formed by the closed dies.

## 2.

The following authorities describe the process of normalizing:

*Metallurgy* by Carl G. Johnson, American Technical Society, 1956, pages 258–259:

> NORMALIZING. If a normalizing heat treatment is specified, it usually refers to a heat treatment that involves heating steel to above its critical range, Fig. 1, followed by cooling in air. * * * The normalizing heat treatment is applied to steels that are known to have poor structures, structures that are uneven in grain size and segregated. Normalizing is used for forgings that have a banded and laminated type of structure, see Fig. 7, Chapter VI, and Fig. 20 of this chapter. Figure 21 illustrates the improvement of structure obtained from a normalizing heat treatment applied to a forging of low alloy steel, carbon 0.30 to 0.40%. Normalizing also is used as a treatment to improve the uniformity and refine the structure of castings as well as forgings. It improves steel from the viewpoint of better results obtained in other treatments, including annealing and hardening. * * * Steel forgings may vary in physical characteristics even when made out of the same lot of steel. This is due to the different handling each may receive while being forged and while cooling from the forging heat. The temperature of the forging at the finishing operation and the cooling rate from the finishing temperature play an impor-

tant part and influence the structure of the finished forging. Any variations in these factors account, in a large measure, for the variations found in forgings and constitute one of the main reasons for specifying a normalizing heat treatment. * * *

*Forging Industry Handbook*, edited by Jon E. Jenson, Director of Marketing and Technical Services, Forging Industry Association, 1966, page 237:

Normalizing is a heat treatment whereby steel is heated to a temperature above its critical temperature (Ac3) and cooled to below that range in air. It has two primary purposes: to refine the grain size and to obtain a carbide size and distribution which will be more favorable for carbide solution on subsequent heat treatment than the as-forged or as-rolled structure.

During forging operations different parts of the forging will be subjected to different degrees of working or plastic deformation; finishing temperatures may vary from one forging to another; and different cooling rates will be present upon cooling the forging to room temperature. A variety of as-forging grain sizes and microstructures can, therefore, be present in as-forged products. The normalizing operation will refine the coarse grain size resulting from a high finished temperature and will produce a uniform relatively fine-grained microstructure.

It is clear from the foregoing authorities that normalizing is a form of heat treatment which improves the properties of the steel comprising the forging or other article. Defendant's position is that forgings which have been normalized to improve the properties of the steel therein are excluded from classification under item 608.25, TSUS. We agree.

### 3.

Headnote 1, part 2, schedule 6 distinguishes between the processes by which a metal product is made, viz.: forging, and various treatments or processes that either improve the properties or appearance of the metal, or protect it against deterioration. Included among the latter processes are heat treatments. Pursuant to such headnote, "unless the context requires otherwise", the provisions of part 2 are applicable to the products described, whether or not such products have been subjected to a heat treatment to improve their properties. In our view, the exclusionary phrase in item 608.25 "not otherwise processed after forging" falls within the language of the headnote "unless the context requires otherwise". Hence, we conclude that forgings which have been normalized are excluded from item 608.25 by the langauge therein "not otherwise processed after forging".

In the recent case of *Karl Schroff & Associates, Inc.* v. *United States*, 67 Cust. Ct. 4, C.D. 4244 (1971), we had for determination the classification of forged valve bodies which had been normalized; and

"[t]he basic question for consideration [was] whether the heat treatment known as 'normalizing' constitutes a process after forging" within the meaning of item 608.25, TSUS. In an opinion by Judge Ford, we held:

> While the normalizing did not change the shape or configuration or outward appearance of the forging, it did improve the properties of the material. It would appear from headnote 1, schedule 6, part 2, that such an operation was considered to be subsequent to rolling, forging, casting, etc., but that unless the context required otherwise, it would not take the merchandise out of the classification applicable if there had been no such processing.
>
> The superior heading to item 608.25 provides for "Forgings of iron or steel, not machined, not tooled, and *not otherwise processed after forging*." [Emphasis supplied.] In view of headnote 1, such processes include those covered by the headnote, which Congress indicated occurred after the forging had been made.
>
> \*　　\*　　\*　　\*　　\*　　\*　　\*
>
> We are of the opinion that normalizing is not a process incidental to creating a forging but is a subsequent process designed to improve the properties of the material. A forging so processed is excluded from classification under item 608.25, *supra.* \* \* \*

Plaintiff relies upon: *United States* v. *J. Gerber & Co., Inc., et al.*, 58 CCPA 110, C.A.D. 1013 (1971) ; and *E. Dillingham, Inc., et al.* v. *United States*, 61 Cust. Ct. 33, C.D. 3522 (1968). Both cases were considered in *Schroff*. Following *Schroff*, we hold that the imported forgings were "otherwise processed after forging", and consequently are excluded from item 608.25.

The protest is overruled, and judgment will issue accordingly.